**Gary E. WEISEL, Plaintiff-Appellant,**

v.

**SINGAPORE JOINT VENTURE, INC., a Florida Corporation, Defendant-Appellee.**

No. 77–2181.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1979.

Mark King Leban, Rosen & Bronis, Stephen J. Bronis, Miami, Fla., Mechanic & Goldstein, Stephen Mechanic, North Miami, Fla., for plaintiff-appellant.

Donald S. Shire, Associate Sol., Washington, D. C., for Dept. of Labor, amicus curiae.

Heidi D. Miller, Dept. of Labor, Fair Labor Standards Division, Washington, D. C., amicus curiae.

E. David Rosen, Michael J. Rosen, Miami, Fla., for defendant-appellee.

Before BROWN, Chief Judge, CLARK and VANCE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

While the case before us will have little or no effect on the course of Anglo-American jurisprudence, the outcome is of vital importance to Gary E. Weisel, the plaintiff-appellant. From April 1, 1974, to December 31, 1975, Weisel worked as a parking valet at the Singapore Hotel/Motel (the Singapore Hotel),[1] owned and operated by the defendant, Singapore Joint Venture, Inc. (Singapore J. V.). Throughout his period of employment at the hotel, Weisel's compensation consisted entirely of gratuities from hotel guests and others using the parking facilities. All was quiet on the Singapore Hotel front until one day—several months after quitting his job—Weisel learned about something called "minimum wage." Weisel decided to explore the possibility of filing a lawsuit and thereafter brought this suit. Sitting without a jury, the Trial Court ruled that minimum wage laws did not apply because Weisel was not an "employee" of the hotel for purposes of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. (FLSA). The Trial Court reasoned that Weisel's service was a mere "luxury" and that his day-to-day orders came from individuals outside the hotel.

We hold that the Trial Court incorrectly concluded that Weisel was not an employee of the hotel for purposes of the FLSA. We therefore reverse and remand for a determination of the proper relief.

## I

Most of the essential facts of this case are not in dispute. Defendant admits that the Singapore Hotel is subject to the minimum wage provisions of the FLSA[2] and must therefore pay the statutory minimum wage to all employees. It is also undisputed that if Weisel was indeed an employee of the Singapore Hotel, he is entitled to unpaid minimum wages totaling $4,657.60.

The following facts are also undisputed. Gary Weisel was hired by Ben Pascal and his partner Al Valone to serve as a parking valet. Pascal and the Singapore Hotel had an unwritten agreement whereby Pascal would park cars, keep the front of the hotel clean, rent cars to hotel guests, and assist guests in carrying their luggage into the hotel. In consideration for these services, Pascal was entitled to tips of up to fifty cents per car for valet parking and to 50% of the rental car fees. He was also given permission to rent several hotel parking spaces to hotel employees and others and to keep all of the money he collected.[3] The fifty cent maximum gratuity on tips for parking was fixed by Meyer Wassell, President and Chairman of the Board of Singapore J. V.[4]

In addition to parking cars, Weisel was required to help unload luggage from cars arriving at the hotel and to sweep the floor at the hotel's entrance.[5]

During working hours, Weisel was required by the defendant, Singapore J. V., to wear a uniform designating the name "Singapore Hotel." The uniform was supplied by the hotel at no expense to Weisel.

Concerning Weisel's supervision, Meyer Wassell admitted at trial that if he gave an

---

1. The Singapore Hotel is a resort hotel located in Bal Harbour, Florida. It can accommodate up to 600 guests.

2. During the time period involved here (April 1, 1974–December 31, 1975), the Singapore Hotel was an enterprise engaged in commerce with an annual gross business (exclusive of taxes) of not less than $250,000. See 29 U.S.C.A. §§ 203(s) and 206.

3. The only limitation was that enough spaces be left for hotel guests.

4. The parking valet was required to give a slip of paper to guests of the hotel informing them of the fifty cent limit on gratuities. Guests of the hotel could park their cars themselves if they desired. Others had to use the valet's services.

5. Weisel testified that he also drove Mr. Wassell home on occasion and sometimes brought drinks to the hotel cardroom. Meyer Wassell testified that he had no knowledge of Weisel carrying drinks to the cardroom and that Weisel was not even allowed in the cardroom because he was under 18 years of age.

instruction concerning the parking valet to either Al Ronin, the hotel's general supervising manager, or to Pascal, he expected these instructions to be carried out. Wassell also testified that he had the power to hire and fire Pascal and that he did in fact fire him.[6]

While working at the Singapore Hotel, Weisel was issued an identification card by the Bal Harbour Police Department. The $2.00 fee for obtaining the card was paid by the Singapore Hotel. Moreover, the card indicated that Weisel was employed by the Singapore Hotel.[7]

Weisel received a couple of small benefits from the hotel. First, he received two Christmas bonuses. Second, he got his meals at the hotel restaurant at an employees' discount.[8]

On one occasion, while parking a car, Weisel accidently struck and killed a guest of the hotel. Although the hotel's insurance policy explicitly excluded independent contractors from coverage, the insurance company nonetheless paid out over $100,000 for settlement of a claim filed as a result of the accident. In a deposition taken during the course of the law suit brought by the deceased's estate, Meyer Wassell stated that Weisel was an employee of the hotel. Mr. Wassell also admitted that he, Wassell, had the power to fire anyone hired by Pascal and could veto the hiring of any individual selected by Pascal. Moreover, Mr. Wassell claimed that he told Mr. Pascal "how to run the operation."

One of the few truly disputed facts concerned who gave Weisel his day-to-day orders. Weisel testified at trial that he received advice and commands from hotel manager Ronin. Meyer Wassell, during the course of his testimony, implied that Weisel's day-to-day orders came from Pascal, although Wassell provided no concrete evidence of this. Moreover, Wassell admitted that *he* gave Pascal the orders which Pascal apparently gave to Weisel.[9]

After hearing all of the testimony presented, the Trial Court entered its findings of fact and conclusions of law. The Court found that Gary Weisel was not an employee of the Singapore Hotel.

## II

In 1938, Congress enacted the FLSA to eliminate the low wages and long working hours then plaguing the American labor market. An important part of the solution was the guarantee of a minimum wage to every "employee" engaged in interstate commerce or working for an enterprise engaged in interstate commerce. 29 U.S.C.A. § 206. Since the FLSA is limited to employees, an employer can avoid the minimum wage requirement by establishing that a particular person is an independent contractor rather than an employee.

The FLSA explains what is meant by the term "employee," but the "definition" provides little help. An employee is one "employed by an employer." 29 U.S.C.A. § 203(e)(1). "Employer" is not defined except for the cryptic remark that the term "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203(d). "Employ" is defined as including "to suffer or permit to work." 29 U.S.C.A. § 203(g).

---

**6.** Weisel testified that after Pascal was fired, he, Weisel, stayed on as a parking valet for a few days and left *voluntarily* when he found a new job.

**7.** According to Weisel, Al Ronin instructed him to list the Singapore Hotel as his employer when applying for the card.

**8.** Although the defendant refused to stipulate that Weisel got such a discount, no evidence was presented to the contrary.

**9.** For example, Wassell testified as follows:

Q [Plaintiff's lawyer]: Do you have any personal knowledge as to whether Gary E. Weisel ever engaged or aided in helping the loading and unloading of luggage of certain cars that would 'pull up to the hotel?

A: Yes, sir, I do.

Q: And at whose instructions or requests were those?

A: I don't know. But probably by his boss, the concessionaire, Mr. Pascal.

Q: And who would have given these instructions to Pascal?

A: I would have.

The Supreme Court has attempted to provide guidance to lower courts in distinguishing between employees and independent contractors (and given the definitions discussed above, courts need all the guidance they can get). In its 1947 "trilogy," the Court explained that such terms as "independent contractor" and "employee" are to be given flexible definitions and should not be limited to their common law meanings. See *United States v. Silk*, 1947, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (for purposes of employment taxes on employers under the Social Security Act, as amended); *Bartels v. Birmingham*, 1947, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (same); *Rutherford Food Corp. v. McComb*, 1947, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (for purposes of the FLSA).

In *Silk*, the Supreme Court provided a number of guidelines to differentiate between an employee and an independent contractor, including the degree of control the business has over the worker and the worker's opportunities for profit or loss.[10] The Court emphasized, however, that "no one [factor] is controlling nor is the list complete." 331 U.S. at 716, 67 S.Ct. at 1469, 91 L.Ed. at 1769.

It is often possible for both sides to point to the presence or absence of particular *Silk* factors. Yet such an attempt to apply mechanically the components of *Silk* represents a distortion of that case. *Silk* clearly emphasized that the ultimate issue is whether as a matter of "economic reality" the particular worker is an employee. 331 U.S. at 713, 67 S.Ct. at 1463, 91 L.Ed. at 1767. See also *Goldberg v. Whitaker House Cooperative*, 1961, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (indicating that " 'economic reality' rather than 'technical concepts' is . . . the test of employment").

In *Mednick v. Albert Enterprises, Inc.*, 5 Cir., 1975, 508 F.2d 297, this Court attempted to apply the precise guidelines of *Silk* in determining whether one whose job was to oversee the operation of cardrooms at an apartment house-hotel was an employee or an independent contractor. The Court observed that these guidelines, when "considered in isolation . . . produce no clear cut conclusion." *Id.* at 300. Yet the Court noted that the mechanical approach taken by both sides gave "too little weight" to matters of economic reality. Based on economic realities, the Court found that the worker qualified as an employee.

As in *Mednick*, we think that a rigid application of the *Silk* guidelines would be a futile exercise. Instead of quibbling over the presence or absence of particular *Silk* factors, we proceed to an analysis of the economic realities.

■ The touchstone of "economic reality" in analyzing a possible employee/employer relationship for purposes of the FLSA is dependency. As we stated in *Usery v. Pilgrim Equipment Company, Inc.*, 5 Cir., 1976, 527 F.2d 1308, 1311, *cert. denied*, 1976, 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89, the "final and determinative question" is whether "the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit."

■ We think that the Trial Court ignored economic realities in holding that Weisel was not an employee.[11] The Trial Court gave two separate reasons for its holding. Neither one can withstand analysis.

---

**10.** Specifically, the Court observed:

[The] degrees of control, opportunities for profit or loss, investment and facilities, permanency of the relation and skill required in the claimed independent operation are important for decision.

331 U.S. at 716, 67 S.Ct. at 1469, 91 L.Ed. at 1769.

**11.** In reviewing the Trial Court's ultimate finding that Weisel was not an employee, we are not constrained by the "clearly erroneous" test. Rather, that finding is treated as a legal determination. See *Shultz v. Hinojosa*, 5 Cir., 1970, 432 F.2d 259, 264. However, the individual findings of fact leading to that conclusion are examined under the "clearly erroneous" test. See *Mitchell v. Strickland Transportation Co.*, 5 Cir., 1955, 228 F.2d 124, 126.

■ First, the Trial Court concluded that Pascal, not the hotel, gave Weisel his day-to-day commands.[12] However, even assuming that Pascal did give some or all daily directives, ultimate control was clearly in the hands of the hotel. Wassell, the defendant's President, admitted in a deposition concerning Weisel's tragic accident that he, Wassell, had the power to fire anyone hired by Pascal and would veto Pascal's hiring decisions.[13] Moreover, Wassell testified at the trial in the instant case that when he gave an order concerning the parking valet, he expected that order to be carried out. Finally, Weisel's compensation was limited to the maximum gratuity of fifty cents for each car parked, and this limitation on gratuities was set not by Pascal but by the hotel. Thus even Weisel's salary was to a large extent controlled by the hotel.

Second, the Trial Court characterized Weisel's work as a "luxury" and of interest to few of the guests of the hotel.[14] This finding ignores the fact that Weisel not only parked cars, but also unloaded luggage for guests and kept the hotel entrance clean. At a minimum, all—including peripatetic judges—would hope that a clean hotel is not a mere "luxury." In any event, given that Weisel's valet services were used by at least some guests, the fact that these services were a "luxury" is irrelevant.[15]

Thus, we are persuaded by neither of the Trial Court's reasons for denying Weisel employee status. We think the Trial Court ignored the many facts indicative of an employer/employee relationship between the hotel and Weisel. For example, Weisel wore a uniform with the hotel's name on it supplied by the hotel. He was covered by the hotel's employee insurance in a tragic accident. His identification card (issued by the police department), procured at the direction and expense of the hotel, prescribed that he was an employee of the hotel. He received Christmas bonuses from the hotel. Finally, he ate meals at the hotel at the employees' discount.

■ In sum, the "economic reality" of Weisel's relationship with the hotel could hardly be clearer. The evidence demonstrates overwhelmingly that Weisel was an employee of the hotel.[16] And the Trial Court's finding is clearly erroneous since it is contrary to the right and justice of the case.[17] We therefore remand the case to

**12.** As the Trial Court stated:
> The plaintiff worked for and took orders directly from one Mr. Pascal and his partner, Al Valone, with the understanding that gratuities or tips would be the plaintiff's only source of compensation.
> The infrequent directives of Mr. Wassell and the defendant's agents were insufficient to alter to fact [sic] that Pascal and Valone exercised primary and continuous control over the plaintiff. It was to Pascal that Mr. Wassell complained when the latter was dissatisfied with the performance of the parking attendants under the control of the former.

**13.** In addition, as indicated in note 6, *supra*, when Wassell fired Pascal, Weisel did not feel compelled to leave also. Weisel left voluntarily a few days after Pascal because he found a better job.

**14.** As the Trial Court observed:
> The notice and extent of the plaintiff's work was not an independent step in the essential operation of the defendant's motel; rather, it amounted to a convenient service performed tangentially to the defendant's principal endeavor. Namely, valet parking was but a luxury requested by only a portion of defendant's guests and their visitors, and by persons who have had no interest in or connection with the defendant motel.

**15.** In *Mednick*, the Court recognized that the worker's function "was not an integrated part of the business." 508 F.2d at 300. Nonetheless, the Court found the worker to be an employee, pointing out that his function was "very useful or even necessary in the market in which [the apartment house-hotel] competed." *Id.* at 301. Weisel's valet services clearly fit within the standard set forth in. *Mednick.*

**16.** Our holding in no way depends on whether Pascal was an independent contractor or was himself an employer, since we believe that, on the facts of this case, Weisel was in reality an employee of the hotel.

**17.** See, e.g., *Bishop v. United States*, 5 Cir., 1959, 266 F.2d 657, 666, quoting *Sanders v. Leech*, 5 Cir., 1946, 158 F.2d 486, 487. ("It is our positive duty to reverse findings as clearly erroneous . . . when [the decision below] does not reflect or represent the truth and right of the case"). *Cf. United States v. Morrison*, 5 Cir., 1957, 247 F.2d 285, 288 (equitable lien

the Trial Court for a determination of the appropriate relief.[18]

REVERSED and REMANDED.

---

arises "because equity in good conscience requires it to accomplish right and justice").

**18.** Weisel is, of course, entitled to the $4,657.60 of unpaid minimum wages. In addition, Weisel seeks liquidated damages (equal to the amount of the unpaid minimum wages) and attorneys' fees. While under 29 U.S.C.A. § 216(b), the awarding of liquidated damages and attorneys' fees appears mandatory, 29 U.S.C.A. § 260 makes clear that with respect to liquidated damages, a defendant can escape paying such damages by demonstrating that the failure to pay minimum wage was in good faith, i.e., defendant did not believe it was violating the FLSA. See, e. g., *Hays v. Republic Steel Corp.,* 5 Cir., 1976, 531 F.2d 1307 (29 U.S.C.A. § 260,

although part of the Portal-to-Portal Act, served to amend the FLSA); *Nitterright v. Claytor, Jr.,* D.D.C.1978, 454 F.Supp. 130 (29 U.S.C.A. § 260 limits 29 U.S.C.A. § 216(b)). Reasonable attorneys' fees are mandatory, however. 454 F.Supp. at 141.

On remand, therefore, the Trial Court should determine whether liquidated damages are appropriate, and if so, how much. It should also award attorneys' fees in an amount deemed reasonable, including those for this appeal.