**Perry HICKEY, Plaintiff-Appellant,**

v.

**ARKLA INDUSTRIES, INC. and Arkansas Louisiana Gas Company, Defendants-Appellees.**

No. 81–2506.

United States Court of Appeals, Fifth Circuit.

March 7, 1983.

Joel J. Reinfeld, Houston, Tex., for plaintiff-appellant.

Arthur Val Perkins, Houston, Tex., for defendants-appellees.

ON PETITION FOR REHEARING

(Opinion October 12, 1982, 5 Cir., 1983, 688 F.2d 1009)

Before GEE, GARWOOD * and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The appellant's petition for panel rehearing is GRANTED. Among other grounds, the appellant suggested that the panel had evaluated the evidence in this case under the wrong standard, pointing out the opinion's reference to Rule 52 of the Federal Rules of Civil Procedure when the case had been tried by a jury and came to us on appeal from the district court's order granting a motion for directed verdict in favor of the appellee. Because the proper standard for evaluating the evidence in this case is that standard set forth in *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969) (en banc), we have granted the petition for panel rehearing.

We have reviewed the record in this case and have very carefully and critically evaluated the evidence to determine whether there was "evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might" conclude that Hickey was an employee of Arkla within the meaning of the relevant cases of this circuit. After considering and evaluating the evidence in this light, we adhere to our affirmance of the district court, but we VACATE our prior opinion, 688 F.2d 1009 (5th Cir.1983), and substitute the following in its stead.

CORRECTED OPINION

Perry Hickey brought suit against Arkla Industries, Inc., and its parent company, Arkansas Louisiana Gas Company, under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634, alleging that the two companies had jointly discriminated against him on the basis of his age by discharging him as a Manufac-

---

* On this rehearing, Judge Garwood replaces Judge Brown who was on the earlier panel.

turer's Sales Representative.[1] Following the presentation of Hickey's evidence, the two companies moved the district court for a directed verdict. Finding that there was no evidence which would enable the jury to properly find that Hickey was an employee under the ADEA, the district court granted the two companies' motion for directed verdict and entered judgment in their favor.

Under the standards set out in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc), if the facts and inferences point so strongly and overwhelmingly in favor of the conclusion that Hickey was not an employee that reasonable men could not arrive at a contrary conclusion, granting of the motion for directed verdict was proper. On the other hand, if there is evidence of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment could conclude that Hickey was an employee, the motion should have been denied and the case submitted to the jury. Finding, pursuant to applicable decisions of this Court, that reasonable men, based upon the evidence in this record, could not conclude that Hickey was an employee, we find that the district court's granting of the motion for directed verdict was proper.

In 1961, Hickey began his employment with Arkla Industries, Inc. (Arkla), as a service representative. Shortly thereafter, he became a District Sales Representative, but left Arkla's employ in the mid-1960's. However, he returned to Arkla in 1966 as a District Sales Representative.

As a District Sales Representative, Hickey was paid a salary plus a 3% commission on all his sales of Arkla Products. Like all other District Sales Representatives, he received certain insurance benefits, an automobile allowance, and expenses and travel reimbursements. He was also allowed to participate in Arkla's retirement plan.

While a District Sales Representative, Hickey could only sell Arkla products. Fur-thermore, he was required to submit numerous daily and weekly reports concerning customer calls he either had made or planned to make.

On March 1, 1980, Hickey voluntarily chose to become one of Arkla's Manufacturer's Sales Representatives. As such, he received no salary or wages. His only compensation from Arkla came from an 8% commission on sales of gas grills and gas lights in an exclusive sales territory. He was also not eligible for any of the allowances, reimbursements or benefits which he had received as a District Sales Representative. In addition, he specifically withdrew from Arkla's Employee Retirement Fund and received his termination payment from that fund.

The Manufacturer's Sales Representative Agreement which Hickey signed designated him as an independent contractor. It also provided that the agreement, which was for an indeterminate period of time, could be cancelled by either party upon 30 days notice. In addition, the agreement contained clauses concerning the sale of competing products, the prices at which Arkla products were to be sold, the manner in which compensation was to be paid, the ineligibility for expense reimbursements, and the nonassignment of the agreement.

After Hickey became a Manufacturer's Sales Representative, Arkla did not make any withholding from his commissions for social security or income tax purposes. Hickey filed his tax return on the forms for self-employed individuals. He personally established a Keogh Retirement plan which, by its very terms, is limited to self-employed individuals.

As a Manufacturer's Sales Representative, Hickey was allowed to sell products of other companies, including those of Arkla's competitors, as long as such products were not directly competitive with Arkla prod-

---

1. In connection with his age discrimination claim, this appeal marks Hickey's second appearance before this court. In *Hickey v. Arkla Industries, Inc.*, 615 F.2d 239 (5th Cir.1980), we reversed the district court's grant of summary judgment in favor of Arkla and its parent com-

pany. This reversal was predicated solely upon the district court's failure to give Hickey ten days' notice that defendants' motion to dismiss for failure to state a claim would be treated as a motion for summary judgment.

ucts he sold. Hickey established Perry Hickey Enterprises as the corporate vehicle for his sales of Arkla products. With another individual, he also established a partnership, Southern States Sales. Hickey sold Arkla products to Southern States Sales and collected his commission. Sixty to sixty-five percent of his sales of Arkla products were made to that company. Southern States Sales then sold the products to its customers. It also sold the products of other companies, such as gas ranges and freezers.

Arkla did not exercise any control over which customers Hickey could call upon in his territory. Furthermore, it did not exercise any control over the manner of market-ing, distribution or the advertising of his marketing of its products. However, Arkla did set the prices at which Hickey could sell its products and did place credit limits on customers.

While Hickey did not have to report to Arkla about his daily activities, he was required to attend Arkla sales meetings. He was also subject to performance evaluations by Arkla and was given a sales quota. Without any charge, Arkla provided Hickey with office space and secretarial services. Arkla did, however, require him to pay the costs of remodeling and redecorating the office space.

In 1976, as a result of the recommendation of a nationally recognized management consulting firm, Arkla decided to change to a different marketing structure. In the new structure, the functions of the Manufacturer's Sales Representatives were absorbed by Zone Managers, undisputedly employees of Arkla. In November, 1976, as a result of the restructuring, Arkla cancelled Hickey's contract, and it is upon this act that Hickey, who was then 49 years of age, bases his claim of employment discrimination on the basis of age.

In our determination of whether the district court properly granted Arkla's motion for directed verdict, i.e., correctly found that there was no evidence of such quality and weight which would support a conclusion that Hickey was an employee under the ADEA, Hickey asks this court to apply the approach used under the Fair Labor Standards Act (FLSA) in such cases as *Mednick v. Albert Enterprises, Inc.,* 508 F.2d 297 (5th Cir.1975); *Usery v. Pilgrim Equipment Co., Inc.,* 527 F.2d 1308 (5th Cir.1976); and *Weisel v. Singapore Joint Venture, Inc.,* 602 F.2d 1185 (5th Cir.1979). In these cases, this Court applied an "economic realities" test under which persons are considered employees if they, "as a matter of economic reality, are dependent upon the business to which they render service." *Mednick, supra,* quoting *Bartels v. Birmingham,* 332 U.S. 126, 130, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947).

Hickey asks that this approach be used instead of the considerably different approaches which are found in various cases arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e–17. In these cases, courts have either applied the traditional common law test of employee status or a hybrid approach which looks at the economic realities of the situation but focuses on the employer's right to control the employee as the most important factor in determining employee status. *Cobb v. Sun Papers, Inc.,* 673 F.2d 337 (11th Cir.1982); *Lutcher v. Musicians Union Local 47,* 633 F.2d 880 (9th Cir.1980); *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir. 1979).

Finding for the following reasons that there was no evidence which, under applicable decisions of this Court, supports a conclusion that Hickey was an employee under the more liberal "economic realities" test used in FLSA cases, we express no opinion on whether it or one of the tests used in Title VII cases should ultimately be used to determine employee status in ADEA cases.

As noted above, the economic realities test is used to determine whether an individual is economically dependent for his livelihood on the business to which he renders service. If a strong degree of economic dependence is present, an employer-employee relationship exists. Five considerations are generally used in gauging the degree of dependence of the alleged em-

ployee to the particular business. They are: degree of control; opportunities for profit or loss; investment in facilities; permanency of relationship; and skill required. *Usery v. Pilgrim Equipment Co., Inc.,* 527 F.2d at 1311.

. Of course, as a practical matter the test cannot be rigidly applied. It is impossible to assign to each of these factors a specific and invariably applied weight. Moreover, it is not necessary that evidence exist with respect to each of these factors in order to determine the existence, *vel non,* of an employment relationship. For instance, evidence on two of these points could be so overwhelming that evidence on the other factors simply could not overcome their weight. In other words, applying the enumerated considerations and considering all the evidence, we must determine whether there was substantial evidence concerning Hickey's economic dependence upon Arkla which would enable a jury to properly find that he occupied employee status.

▮ A review of the considerations listed above initially discloses that Hickey, as a Manufacturer's Sales Representative, was largely independent of Arkla's control. He was not required to deal exclusively with Arkla. He was allowed to establish his own business organization and to use that business organization to deal with other businesses. He was not required to keep documented reports or to account for his daily activities.

The opportunities for profit were significant. Furthermore, Hickey controlled the determinants of customer volume which played the most vital role in his opportunities for profit. These determinants, initiative and skill, were far more vital than those of price and territory which were regulated by Arkla.

As a Manufacturer's Sales Representative, Hickey had a continuing investment in his business. While his capital outlay was minimal, he had operating expenses, automobile expenses and travel expenses which had a direct relationship to the overall cost of operating his business. All investment or risk capital was not provided by Arkla.

While Arkla furnished office space, secretarial services and advertising, it was not indispensable to the operation of his business that these items be furnished by Arkla.

With respect to the permanency of his relationship with Arkla, Hickey, notwithstanding his tenure of ten years, was capable of terminating relations with Arkla upon 30 days notice and taking his business organization and talents to other manufacturers of similar or different products. In fact, the evidence shows that he established a partnership with another individual which dealt in the sale of gas grills, gas lights, gas ranges and freezers.

Hickey's business and livelihood was only dependent upon Arkla as any business is "dependent" upon a major customer, client, or supplier. Upon losing a major customer, or in this case, a "supplier," serious economic adjustments naturally will have to be made to make up for the loss. Even so, however great the loss, it will not necessarily serve to establish "economic dependence" so as to create an employer-employee relationship. Moreover, it is clear that such a business relationship is not one which was contemplated by Congress when designing either the ADEA, or the FLSA on which we here draw for guidance in the determination of employee status. See *Mednick v. Albert Enterprises, Inc.,* 508 F.2d at 300–301.

Lastly, unlike the *Pilgrim Equipment* laundry operators, the *Mednick* cardroom attendant, and the *Weisel* parking valet, Hickey was able to exert initiative in the operation of his business. Certain major components of a business which are open to initiative—advertising himself and his companies, the methods of marketing and sales, the choice of other products to sell—were controlled by him. In short, he had an enterprise whose success actually depended upon *his* initiative, judgment and foresight.

From the foregoing analysis, after evaluating the evidence according to the guidelines set forth in *Mednick, Pilgrim Equipment* and *Weisel,* we are convinced that there is no substantial evidence which

would support a finding that Hickey, as a matter of economic reality, was dependent for his livelihood on Arkla. Therefore, we conclude that the district court did not err in finding that there was no substantial evidence which would enable the jury to properly find that Hickey was Arkla's employee under the ADEA, and, based on that finding, in granting the motion for directed verdict.

Hickey's final argument can be disposed of with short words and a swift pen. He argues that even if he is not an employee of Arkla's within the meaning of the cases, he still has a cause of action. According to him, because the ADEA covers all individuals having an economic relationship with a business entity, employee status is irrelevant. This argument is primarily based upon principles of statutory construction advanced by him, and in our considered opinion, his contentions are found to be greatly wanting, if not specious.

There is no legislative history to support Hickey's contention that employee status is not required for coverage under the ADEA. Moreover, his argument defies a plain reading of the statute. Whether it would be desirable to include independent contractors within ADEA coverage is clearly a matter for Congress, and emphatically not for the courts, to decide.

Having decided that Hickey must be an employee of Arkla in order to have a cause of action under the ADEA and that the district court was correct in concluding that a jury could not properly find he was an employee, we affirm its decision.

AFFIRMED.