**Mary Ann DAKE, Plaintiff,**

v.

**MUTUAL OF OMAHA INSURANCE COMPANY, United of Omaha Insurance Company, Defendants.**

**No. C84–808.**

United States District Court, N.D. Ohio, E.D.

Nov. 29, 1984.

Steven F. Mitchell, Cleveland, Ohio, for plaintiff.

Curtiss Isler, Tom McDonald, Arter & Hadden, Cleveland, Ohio, for defendants.

### ORDER GRANTING PARTIAL SUMMARY JUDGMENT

KRENZLER, District Judge.

In this case, plaintiff Mary Ann Dake claims that she was illegally discriminated against on the basis of age when her contracts to sell insurance for Mutual of Omaha Insurance Company and United of Omaha Insurance Company were terminated. The complaint also contains two state claims based upon breach of contract and fraud.

Defendants have filed a motion for partial summary judgment on the ADEA claim, arguing that the plaintiff was not an employee of the defendant companies, but merely an independent contractor. Consequently, they argue, plaintiff is not covered by the ADEA and has no claim under the provisions of that Act. The plaintiff's response argues that plaintiff was an em-

---

ployee, or, in the alternative, that plaintiff's status was enough in question that the determination of whether or not she was an employee should be left to the jury. The Court agrees with defendants and grants their motion for partial summary judgment.

In determining whether plaintiff is an employee under the ADEA, the Court looks first to the statute. Unfortunately, the statute, in the definition section, merely states, "The term 'employee' means an individual employed by an employer...." 29 U.S.C. § 630(f). Congress has obviously left the ADEA definition of employee up to the courts.

Four of the circuits have reported cases in the last two years regarding the inclusion or exclusion of certain persons from the ranks of employees under the ADEA. In *EEOC v. First Catholic Slovak Ladies Association*, 694 F.2d 1068 (6th Cir.1982), the court determined that individuals who served on the Association's Board of Directors could be employees if their "primary role" was that of any employee. In establishing that these Directors were primarily employees, the court stated:

> These individuals performed traditional employee duties: maintaining records, preparing financial statements, managing the office. They were responsible for their work to the governing body of the organization and they drew salaries as employees.

694 F.2d 1070. The court also approvingly noted that:

> When interpreting the term "employee" in social welfare legislation such as the ADEA, Title VII, the Fair Labor Standards Act and the National Labor Relations Act, courts have used a broad definition so as to effectuate the stated purposes of these Acts.

*Id.* (citations omitted).

In the other circuits, the courts have been more explicit about trying to lay down a test for general application. In *Hickey v. Arkla Industries, Inc.*, 699 F.2d 748 (5th Cir.1983), the court identified two tests for determining employee status. First was the test traditionally applied in Fair Labor Standards Act cases known as the "economic realities" test. Under this approach, an employee is one who is "economically dependent for his livelihood on the business to which he renders service." *Id.* at 751 (citations omitted). *Hickey* then goes on to define the "hybrid" test which "looks at the economic realities of the situation but focuses on the employer's right to control the employee as the most important factor in determining employee status." *Id.* (citations omitted).

The *Hickey* court opted not to choose between these tests noting that as a "Manufacturer's Sales Representative," the plaintiff would not qualify under the more liberal economic realities test and it was therefore unnecessary to reach the question of which test was more appropriate. Still, the economic realities test applied in *Hickey* included factors going well beyond the economic dependence of the plaintiff on the defendant's business and included "degree of control [by the employer]; opportunities for profit or loss; investment in facilities; permanency of relationship; and skill required." *Id.* at 752 (citations omitted). Indeed, the test applied in *Hickey* closely resembles the "hybrid" test further explained and applied in the third and four circuits.

In *EEOC v. Zippo Manufacturing Co.*, 713 F.2d 32 (3rd Cir.1983), after an exhaustive examination of the histories of the respective tests and their application, the court determined that the hybrid test was the appropriate test in ADEA cases. The court reasoned that because the ADEA's substantive prohibitions were derived directly from those under Title VII, and because the determination of employee status is a question relating to substantive prohibitions, the established Title VII hybrid test was intended to apply to the ADEA, too. Factors to be considered, according to the court in *Zippo*, are the kind of work and supervision, the skill required, the provision of equipment and work space, the length of employment, the method of payment, the terms for termination, the exist-

ence of annual leave, the importance of the work to the employer, the extent of accrued retirement benefits, the method by which taxes are paid, and the intention of the parties. *Id.* at 37.

After adopting the hybrid test, the *Zippo* court determined that District Managers were not employees of Zippo. In making that determination, factors considered relevant were that District Managers worked on a commission basis, were not generally reimbursed for their expenses, received no additional salary or fringe benefits, did not have income tax withheld, had their earnings reported to the IRS on Form 1099, set their own working hours and vacation time without consultation with Zippo, and by contract could quit or be terminated for any reason or no reason with 30 days' written notice.

This result is similar to the result in *Hickey, supra,* in which it was determined that the plaintiff was not an employee of the defendant corporation. Factors relevant to that determination were that plaintiff was paid on a commission basis, was not eligible for reimbursements or benefits from the employee retirement fund, did not have any taxes withheld, filed his taxes on forms for the self-employed, could sell the products of other companies, had personal control over the manner of marketing, distributing and advertising his product, did not have to report about his daily activities (although he did have to attend sales meetings), and could terminate his agreement to act as a Manufacturer's Sales Representative on 30 days' notice. *Id.* at 750, 751.

The hybrid test was again explicitly adopted for ADEA cases in *Garrett v. Phillips Mills, Inc.,* 721 F.2d 979 (4th Cir. 1983). There again, the plaintiff, a salesman, was found not to be an employee under that test. In *Garrett,* the court found that the plaintiff was independent of the company's control, not required to account for his daily activities, not prohibited from selling products of other companies, expected to set his own working hours and methods of selling, not reimbursed for operating expenses, treated as an independent contractor for tax purposes, and covered by a retirement plan eligible only to self-employed people. In addition, the plaintiff's contract expressly provided that he was not to be considered an employee. *Id.* at 982.

This Court agrees with the Third, Fourth, and Fifth Circuits in their adoption and application of a hybrid test for determining employee status under the ADEA. While cognizant of the Sixth Circuit's general preference towards broad interpretation of the term employee in social welfare legislation, the Court notes that the Sixth Circuit has not expressly set down a test for application. The hybrid test set down and applied in the other circuits is consistent with the Sixth Circuit's treatment of this question in *EEOC v. First Catholic Slovak Ladies Association, supra.* Accordingly, this Court will apply the hybrid test in considering whether there is a genuine issue of material fact which would support a finding of the instant plaintiff's status as an employee.

The plaintiff suggests that the Court mechanically apply the eleven factors listed in defendants' brief, see whether plaintiff has satisfied *any* of these indicia of employee status, and if so, deny summary judgment. While these factors were considered by the *Zippo* court, that court identified the eleven factors as "[o]ther factors that enter into a court's determination of employee status under th[e] hybrid standard." Similarly, the court in *Spirides v. Reinhardt,* 613 F.2d 826 (D.C.Cir.1979), which originally articulated the eleven factors cited in *Zippo,* called the factors "additional matters of fact ... among others." This Court will not limit its determination to the eleven factors cited in *Zippo* nor will it attempt to set down a definitive list of factors relevant to the determination of questions of employee status. Instead, the Court will consider the facts of the instant case in the face of the two prongs of the hybrid test and make its determination.

The plaintiff's duties and responsibilities as a salesperson for the defendant corporations were remarkably similar to those of

the Sales Representative in *Hickey, supra,* the District Manager in *Zippo, supra,* and the salesman in *Garrett, supra.* Mary Ann Dake was paid on a commission basis (Dake deposition at 34), did not have taxes withheld by the defendants (Dake, pp. 35–36), used a Form 1099 to file her taxes (Dake, pp. 35–36), and admitted that she received no additional compensation or fringe benefit from the defendants (Dake, pp. 56, 60, 61). The plaintiff covered her own business expenses (Dake, pp. 62–64, 68–69), was free to solicit whomever she chose (Affidavits of Robert Kelly and Theodore Starr at ¶ 6), and was permitted to and did sell insurance for other insurance companies (Dake, pp. 20–25). She acknowledged that her earnings were based on how hard she worked and her own sales ability rather than upon the productivity or success of the defendants (Dake, pp. 54–55), and was, consequently, responsible for setting her own schedule (Dake, pp. 49–51, 91–92). Finally, plaintiff's contract with United of Omaha explicitly stated that she was not to be considered an employee, but an independent contractor. (Brief in Support of Defendant's Motion for Summary Judgment, Exhibit E, page 2, under General Provision, Section (1).)

The combined application of the prongs of the hybrid test yield a clear determination that the plaintiff was not an employee of the defendants but was an independent contractor. The defendants exercised virtually no control over the plaintiff in her sales practices, and it could not be fairly concluded that she was economically dependent upon the defendants given the meaning of that prong of the test by the courts. As noted by Judge Higgenbotham in *Zippo, supra:*

> Although the Age Discrimination in Employment Act has such a laudable title that [it] might induce laymen to infer that the statute was designed to prevent *all* age discrimination against those who work for a living, its congressional purpose was far less extensive since it prohibits only some types of age discrimination. Although some people who discriminate against the aged might offend an increasingly shared social value which condemns such discrimination, such discrimination would not thereby violate any federal law unless it was specifically prohibited by Congress.

*Id.* at 35.

The plaintiff in this case does not qualify as an employee under the ADEA and is therefore unable to seek relief in the federal courts under its provisions. Accordingly, the defendants' motion for partial summary judgment is granted and the plaintiff's first cause of action is dismissed with prejudice.

This case will proceed to trial on the breach of contract and fraud claims, counts II and III in the plaintiff's complaint.

IT IS SO ORDERED.