**Anita Kaye OWENS, Plaintiff,**

**v.**

**SOUTHERN DEVELOPMENT COUNCIL, INC.,
Defendant.**

**No. Civ.A. 99–T–268–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Aug. 17, 1999.

---

**1212**

Gary E. Atchison, Montgomery, AL, for plaintiff.

Bruce Johnson Downey, III, Capell & Howard, PC, Montgomery, AL, for defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

The issue before the court is whether the members of a defendant's board of directors may be counted as 'employees' so as to confer subject-matter jurisdiction on the court under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C.A. §§ 1981a, 2000e through 2000e–17), and the Americans with Disabilities Act (42 U.S.C.A. §§ 12101 through 12213), commonly referred to as the ADA. Plaintiff Anita Kaye Owens filed this lawsuit against defendant Southern Development Council, Inc. (SDC) charging it with sex, race, and disability discrimination. This lawsuit is currently before the court on SDC's motion for summary judgment; SDC contends that the court lacks subject-matter jurisdiction over Owens's claims.[1] For the reasons that follow, the court holds that, because the required number of employees is lacking and thus the court is without subject-matter jurisdiction, SDC's motion will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-al fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for its motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations or denials of its pleadings. See Fed.R.Civ.P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL SUMMARY

The facts, taken in the light most favorable to Owens, are as follows. SDC is a non-profit corporation, located in Montgomery, Alabama, that assists small businesses in securing development loans. Owens was employed by SDC as a receptionist and administrative assistant from September 1997 through July 7, 1998.

While at work at SDC on February 12, 1998, Owens and a female co-worker discovered a copy of a photograph depicting several people engaged in sexual acts. The photograph was copied on SDC letterhead and apparently had been downloaded

---

**1.** SDC actually filed a motion to dismiss. In an order entered May 17, 1999, the court treated SDC's motion as one for summary judgment.

from the internet, as a website address was printed on the bottom of the letter-head. Upon seeing the photograph, Owens and her co-worker became very upset. Owens was disturbed by the photograph due to her Christian faith and also because she had been raped in 1985 and physically abused several times as a child. Owens and her co-worker reported their finding of the photograph to their supervisor.

A few months later, on June 29, 1998, Owens logged on to her computer at SDC and saw a Windows directory box labeled 'Porn.' That directory box had never before appeared on her computer screen. As a result of this incident, Owens had a panic attack and flashbacks of her rape and abuse as a child. Owens later asked Tamara Lee, SDC's Executive Director, if she could take leave in order to recover from this incident. Lee denied her request. Soon thereafter, on July 7, 1998, Owens resigned from SDC.

After filing charges with the Equal Employment Opportunity Commission and receiving a right-to-sue letter, Owens filed a complaint in this court on March 17, 1999. In her complaint, Owens alleges that SDC constructively discharged her because of her race, sex, and disability, in violation of Title VII and the ADA. Owens seeks back pay and reinstatement to her former job at SDC.

## III. DISCUSSION

SDC has moved to dismiss Owens's complaint for lack of subject-matter jurisdiction. SDC contends that at all times relevant to the acts complained of by Owens it employed fewer than 15 individuals and therefore is not subject to liability under Title VII and the ADA.

Title VII makes it unlawful for an "employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race,

color, religion, sex, or national origin." 42 U.S.C.A. § 2000e–2(a)(1). The ADA makes it unlawful for an 'employer' to discriminate "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C.A. § 12112(a). Title VII defines 'employer' as "a person engaged in an industry affecting commerce who has *fifteen or more employees* for each working day in each of twenty or more calendar weeks in the current or preceding calendar year," 42 U.S.C.A. § 2000e(b) (emphasis added); and the ADA similarly defines the term as "a person engaged in an industry affecting commerce who has *15 or more employees* for each working day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C.A. § 12111(5)(A) (emphasis added).

Whether a defendant meets Title VII's and the ADA's definition of 'employer' is a threshold jurisdictional issue. *See Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1340 (11th Cir.1999); *Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1359 (11th Cir.1994). A plaintiff must show that her 'employer' had fifteen or more employees for the requisite period provided under the statutes before her Title VII and ADA claims can be reached. *See Lyes*, 166 F.3d at 1340–41. Therefore, whether a defendant is an 'employer' is dependent upon whether it employs the requisite number of employees.

The parties therefore agree that, if SDC's directors are its 'employees,' SDC is an 'employer' and, therefore, is subject to liability under Title VII and the ADA. The only issue in dispute is whether SDC's directors are its 'employees.'

SDC has submitted the affidavit of Eddie E. Helms, SDC's Financial Manager, which states that at no time from December 31, 1996, through April 5, 1999, did SDC employ more than twelve individuals.[2] Attached to Helms's affidavit are

---

**2.** Helms's certification actually states that December 31, *1997,* is the beginning date of the period in which SDC did not employ more than twelve individuals. However, it is obvi-

ous from the Quarterly Contribution and Wage Reports attached to his certification that Helms meant December 31, *1996,* as the beginning date.

SDC's Quarterly Contribution and Wage Reports for the quarters ending March 31, 1997, through June 30, 1998, which confirm Helms's testimony for those quarters.

In response, Owens contends that SDC has ten individuals on its board of directors, that the directors are employees of SDC, and that, when the ten directors are added to the twelve individuals referred to in Helms's affidavit, SDC has the requisite number of employees to make it subject to liability under Title VII and the ADA. Owens has submitted her own affidavit and the affidavit of Christine Maddox, Helms's former assistant at SDC, both of which state that SDC paid its ten directors during the relevant time period. In her affidavit, Owens also testifies that she worked with various members of SDC's board of directors on a daily basis.

SDC responds by arguing that its directors are not employees because they do not receive compensation, but rather only a director's fee and expenses, and there is no evidence of a traditional employer-employee relationship between SDC and its directors. In support of its argument, SDC has submitted a copy of its by-laws, the affidavit of John Knight, one of its directors, Knight's 1099–MISC federal tax form from SDC, a check stub that SDC issued to Knight, and the affidavit of SDC Executive Director Lee.

 Title VII and the ADA define 'employee' as "an individual employed by an employer." 42 U.S.C.A. §§ 2000e(f), 12111(4). This definition is of little help. However, in *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997), the United States Supreme Court clarified when an individual is an 'employee' under Title VII. In order for an individual to be an 'employee,' the Court explained, she must have an 'employment relationship' with her employer. *See Walters*, 519 U.S. at 206–07, 117 S.Ct. at 663–64. An "employment relationship is most readily dem-

onstrated by the individual's appearance on the employer's payroll." *Id.* at 206, 117 S.Ct. at 663. This test is called the 'payroll method.' *See id.* However, an individual's appearance on the employer's payroll is not necessarily dispositive, as "an individual who appears on the payroll but is not an 'employee' under traditional principles of agency law would not count toward the 15–employee minimum." *Id.* at 211, 117 S.Ct. at 666 (internal citation omitted). Therefore, for an individual to be an 'employee' under Title VII, the 'payroll method' *and* the traditional agency-law definition of 'employee' must be satisfied. *See id.* The failure to satisfy either element precludes a finding that an individual is an 'employee.'

### A. Payroll Method

Although not expressly mentioning either *Walters* or the 'payroll method,' the Eleventh Circuit Court of Appeals' recent decision in *Llampallas v. Mini–Circuits Lab, Inc.*, 163 F.3d 1236 (11th Cir.1998), is consistent with this principle. There, the appellate court concluded that "only individuals who receive compensation from an employer can be deemed 'employees' under [Title VII]." 163 F.3d at 1243.

*Llampallas* presented the issue of whether a member of the board of directors of the defendant condominium association was an 'employee' of the defendant so as to allow the director to sue the condominium association under Title VII. *See id.* at 1243–44. Answering that question in the negative, the appellate court held that, "because the record established that [the director] received no compensation as an officer-director of [the condominium association], she cannot be considered an 'employee' of [the condominium association] for Title VII jurisdictional purposes." [3] *Id.* at 1244. The *Llampallas* court reasoned that the director did not receive any salary or wages for her posi-

---

**3.** The *Llampallas* court reached the conclusion that only compensated individuals are 'employees' in the context of defining 'em-

ployee' for purposes of determining who is a proper plaintiff, not who is an 'employer,' under Title VII. *See* 163 F.3d at 1243–44.

tion with the condominium association. *See id.* at 1244 n. 14. Although the director introduced into evidence a check for $1,000 issued to her by the condominium association, the court found that this check did not represent compensation for three reasons: first, the check was labeled 'director's fee,' *see id.;* second, the condominium association's by-laws stated that " '[n]o compensation shall be paid to Directors or Officers for their services as Directors or Officers,' " *id.;* and, third, the plaintiff reported the $1,000 as 'nonemployee compensation' for income-tax purposes. *See id.* Therefore, in determining whether SDC's directors are its employees, the initial, and possibly dispositive, issue is whether SDC compensated any or all of its directors.

SDC has submitted the following evidence in support of its argument that SDC's directors receive only a director's fee and expenses, not compensation, from SDC:

• SDC's by-laws, which provide, "Directors shall not receive any stated salaries for their services but, by resolution of the Board of Directors, a fixed sum and expenses of attendance, if any, may be allowed for attendance at each regular or special meeting of the Board."

• Board Director Knight's federal 1099–MISC tax form issued by SDC, which states that Knight received $8,500 in 'Nonemployee compensation' from SDC in 1998.

• A check dated June 30, 1999, written on SDC's account and made payable to Knight in the amount of $750, the stub to which is labeled 'Attendance Fee.'

• Knight's deposition, which states that SDC pays each of its board members $750 for each board meeting he attends.

• The affidavit of Executive Director Lee, which states that SDC's directors are not employees because, in contrast with its treatment of its directors, SDC withholds social security and federal and state income tax from its staff personnel's paychecks, pays its staff personnel twice a month, and provides its staff

personnel with health and life insurance, a 401(K) retirement plan, vacation, sick leave, and a W–2 statement at year's end.

On the other hand, Owens has submitted her own affidavit and the affidavit of Christine Maddox, Helm's assistant at SDC from early 1989 through mid–1995. In her affidavit, Maddox testifies that while working for SDC she observed that SDC sent, "during each pay period, payroll checks to the members of [SDC's] Board of Directors, which was composed of approximately ten (10) members." In addition, Maddox states that she wrote checks for SDC which included:

"check[s] for monthly incurred expenses for each Board member and ... check[s] to pay the Board members for attendance to the monthly board meeting and if said members were on the Executive Board, additional payment for his or her attendance to the Executive Board meeting each month, which followed each monthly board meeting."

Owens testified that, during her tenure at SDC, all SDC employees and board members "were paid or given income compensation by means of white or off white payroll checking account checks which were sealed within distinctive envelopes." Furthermore, she testified that each SDC board member that attended the executive board meeting each month received an additional payroll check for attendance at that meeting. Finally, Owens stated that SDC's pattern and practice of paying board members, which Maddox alleged in her affidavit, continued through Owens's tenure with SDC, as Maddox left SDC before Owens started her employment.

■ 'Compensation' is synonymous with salary or wages. *See Llampallas,* 163 F.3d at 1244 n. 14. A director's fee does not constitute compensation, at least when it is reported as 'nonemployee compensation' for tax purposes and is paid by an entity whose by-laws prohibit it from compensating its directors. *See id.*

■ Here, SDC's evidence suggests that SDC provided, and was allowed to provide, its directors with only a director's fee and expenses. Owens has not controverted SDC's evidence that the director's fee was reported by SDC as 'nonemployee compensation' for tax purposes and that SDC's by-laws prohibit SDC from compensating its directors. Therefore, to the extent that SDC's board members received only a director's fee and expenses from SDC, the court finds as a matter of law that the directors do not receive compensation from SDC. *See id.*

■ However, as discussed, Maddox and Owens have testified that, in addition to a director's fee and expenses, SDC provided each of its board members with a payroll check each pay-period, which is twice a month. Drawing all reasonable inferences from this testimony in Owens's favor, as it must, *see Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356, the court finds that there is a genuine issue of material fact as to whether SDC paid its directors compensation in addition to a director's fee and expenses during the relevant time period.

This finding does not end the court's analysis, however. Because there is a fact issue as to whether SDC's directors were compensated—that is, on the payroll—the court must address whether SDC's directors are 'employees' under traditional common-law agency principles. *See Walters,* 519 U.S. at 211–12, 117 S.Ct. at 666.

### B. Traditional Agency-law

■ In determining whether a director is an 'employee,' courts have encapsulated the traditional common-law agency test[4] into a three-factor test: (1) whether the director performed traditional employee duties; (2) whether the director was regularly employed by a separate entity; and (3) whether the director reported to someone higher. *See, e.g., Equal Employment Opportunity Comm'n v. Johnson & Higgins, Inc.,* 91 F.3d 1529, 1539 (2d Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 47, 139 L.Ed.2d 13 (1997); *Chavero v. Local 241, Div. of the Amalgamated Transit Union,* 787 F.2d 1154, 1157 (7th Cir.1986).

■ Owens has failed to establish a genuine issue of material fact as to any of these three factors. First, Owens has not contradicted SDC's evidence that SDC directors do not perform traditional employee duties. Lee has testified that, as Executive Director, she is "responsible for the day-to-day operations of SDC," and that the "Board of Directors does not participate in the day-to-day operations of SDC." Furthermore, "SDC's employees [—not including its directors—] maintain all records, prepare financial statements, process loan applications, and otherwise manage the day-to-day operations of the office." Similarly, Knight has testified that he, as a director, is not involved in the daily activities of SDC, such as maintaining records, preparing financial statements, and managing the office.

4. In *Walters,* the Supreme Court cited *Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), as providing an example of the common-law agency test. *See* 519 U.S. at 211, 117 S.Ct. at 666. The elements of that test are: the hiring party's right to control the hired party; the skill required; the source of the tools used; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. *See Darden,* 503 U.S. at 323–24, 112 S.Ct. at 1348.

*Darden* was brought under the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. §§ 1001–1461 (commonly known as ERISA), and required the Court to construe 'employee' as that term is used in the statute to determine whether an agent of the defendant could bring suit under the statute. Therefore, *Darden* is similar to *Llampallas* in that, unlike the case at bar, the Court construed 'employee' for purposes of determining who was a proper plaintiff under the statute, not for purposes of defining 'employer.'

Owens has testified that while working for SDC she would regularly communicate with directors on the phone and in person: "[D]uring my employment with [SDC,] I worked with various Board members on a daily basis by telephone and in person as needed by the demands of the company's cases." Similarly, directors called, were called, or came into the office daily "regarding business matters of the company." Owens's testimony, however, does not reasonably suggest that SDC's directors performed traditional employee duties—maintaining records, preparing financial statements, and managing the office. *See Kern v. City of Rochester*, 93 F.3d 38, 47 (2d Cir.1996) ("There is no indication that any of the non-officer board members performed any traditional employee duties, such as maintaining records or managing the office."), *cert. denied*, 520 U.S. 1155, 117 S.Ct. 1335, 137 L.Ed.2d 494 (1997); *Equal Employment Opportunity Comm'n v. First Catholic Slovak Ladies Ass'n*, 694 F.2d 1068, 1070 (6th Cir.1982) (listing the traditional employee duties as maintaining records, preparing financial statements, and managing the office), *cert. denied*, 464 U.S. 819, 104 S.Ct. 80, 78 L.Ed.2d 90 (1983); *Dake v. Mutual of Omaha Ins. Co.*, 600 F.Supp. 63, 64 (N.D.Ohio 1984) (same); *cf. Johnson & Higgins, Inc.*, 91 F.3d at 1539 (finding that a director did perform traditional employee duties when he was chosen from people in senior management positions, oversaw the firm's legal affairs, and was responsible for keeping corporate records).

Second, Owens has not presented any evidence that contradicts Knight's testimony that he and, to his knowledge, each of SDC's other directors are engaged in full-time employment outside of their duties as SDC directors.

Third and finally, Owens has not disputed SDC's evidence that SDC's directors do not report to anyone higher than themselves.

In order for this matter to proceed, Owens must provide evidence that demonstrates a genuine issue of material fact

that SDC's directors both are compensated by SDC and satisfy the traditional common-law agency definition of an employee. *See Walters*, 519 U.S. at 211–12, 117 S.Ct. at 666. Owens has done the former, but not the latter. Therefore, the court finds that as a matter of law SDC's directors are not 'employees' under Title VII and the ADA. Because it is undisputed that SDC had only twelve employees during the period relevant to Owens's lawsuit, the court does not have subject-matter jurisdiction over Owens's Title VII and ADA claims against SDC.

An appropriate judgment will be entered.