**Terry S. METZENBAUM, Plaintiff,**

v.

**JOHN CARROLL UNIVERSITY,
Defendant.**

No. 1:96 CV 1387.

United States District Court,
N.D. Ohio,
Eastern Division.

Oct. 22, 1997.

Dennis P. Zapka, Emery James Leuchtag, Zapka & Leuchtag, Warren, OH, for plaintiff.

James A. Rydzel, Rosalie Beth Harrison, Jones, Day, Reavis & Pogue, Murray K. Lenson, Andrew A. Paisley, Kimberly Brown Schroeder, Ulmer & Berne, Cleveland, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court on the Motion of Defendant John Carroll University for Summary Judgment. (Document # 25). For the reasons that follow, Defendant's Motion is GRANTED.

### Procedural and Factual History [1]

Plaintiff, Terry S. Metzenbaum, filed this employment discrimination lawsuit against his former employer, Defendant John Carroll University ("JCU" or "the University"), on June 26, 1996, alleging that Defendant requested his medical records, suspended and discharged him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 1401 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Ohio Revised Code § 4112 *et seq.*

Plaintiff was hired by John Carroll University as a campus police officer on August 1, 1990. Plaintiff submitted to the required pre-employment fitness examination which concluded that Plaintiff was on medication and was fit for the duties of a campus police officer. Plaintiff's duties included patrolling the campus and buildings and being stationed at the guardhouse. Plaintiff possessed keys which gave him unlimited access to the University's residence halls, classrooms and administrative buildings. Plaintiff

---

1. The factual summary is based on the parties' statements of facts. Those material facts which are controverted and supported by deposition testimony, affidavit or other evidence are stated in the light most favorable to Plaintiff, the non-moving party.

worked the third shift during his entire tenure with Defendant.

Prompted by a shooting incident involving a student and a campus police officer at the University of Toledo, on June 1, 1994, Defendant directed all campus police officers to undergo a psychological evaluation. Plaintiff did not consider the psychological evaluation to be other than legitimate and he submitted to the evaluation willingly. Plaintiff was evaluated by Dr. Sherrod Morehead in late July of 1994. Dr. Morehead issued a report concerning his evaluation of Plaintiff finding that Plaintiff is a "conscientious individual and a person who is well informed with regard to the details of his work and responsibilities" and concluding that Plaintiff was well suited for the job.

Plaintiff refused to sign a release permitting Dr. Morehead to release his report to Defendant because he took exception to a portion of the report which did not, according to Plaintiff, comport with sound psychological practices. Plaintiff was concerned that the report might be obtained, misinterpreted and misused by a company to whom he had applied for employment. Plaintiff also stated that he was worried "about anybody when the University gets something sensitive like this". In September 1994, Plaintiff filed a complaint against Dr. Morehead with the Ohio Psychology Board because he feared that Dr. Morehead had released the report to Defendant. On March 15, 1995, the Ohio Psychology Board dismissed Plaintiff's complaint.

On March 6, 1995, after seven months of refusing to sign the release of the evaluation, Plaintiff was placed on unpaid leave until he signed a release. Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") on March 7, 1995, alleging that the University retaliated against him because he had filed a complaint against Dr. Morehead. (Charge # 1).

Plaintiff filed a lawsuit against Defendant on March 13, 1995, in the Court of Common Pleas for Cuyahoga County, requesting a temporary restraining order prohibiting the University from placing Plaintiff on unpaid administrative leave.[2] The Court granted Plaintiff's Motion for a Temporary Restraining Order, ex parte, and ordered that Plaintiff be placed on paid administrative leave pending a hearing on Plaintiff's request for preliminary injunctive relief.

Defendant removed the lawsuit to federal court on March 17, 1995, and requested that the temporary restraining order be dissolved. A hearing was held on the record in the chambers of Judge Ann Aldrich at which Plaintiff's counsel represented that Plaintiff would be irreparably harmed if his employment were terminated because Plaintiff was under the treatment of a physician and would be unable to continue his Cobra health care benefits if he was without employment. While at the hearing, Defendant's attorneys observed plaintiff acting strangely in that he was slurring his speech, falling asleep at the hearing and threatening the Defendant's attorneys with disciplinary action. The Defendant's attorneys conveyed this information to Father Richard Salmi, Vice president of Student Affairs of JCU, and to Jonathan Ivec, Vice President of Business of JCU.

On or about March 20, 1995, Plaintiff provided a copy of his psychological evaluation to the University and dismissed his lawsuit without prejudice. However, in light of the information regarding Plaintiffs strange conduct at the hearing and Plaintiffs attorney's representations about Plaintiffs ongoing medical care, Father Salmi was concerned about Plaintiff's fitness for duty and felt that Plaintiff should identify all of his treating physicians and psychologists, if any, and provide the University with a limited release permitting his physicians or psychologists to produce his medical records relating to medical care that he had received for the previous six months. Father Salmi decided to terminate Plaintiff's employment if Plaintiff failed to comply with the request for his medical records. By letter dated March 22, 1995, Plaintiffs commanding officer, Francis

---

2. Plaintiff sought only injunctive relief in this state court lawsuit. He did not seek damages for Defendant's alleged violation of any of the various anti-discrimination statutes at issue in this action.

McCaffrey, requested a list of the physicians or other health care professionals, including psychiatrists, that Plaintiff was seeing or had seen in the last six months for medical care and his permission for those physicians to release all medical information and records, including medications that Plaintiff was taking, to JCU. Plaintiff was continued on paid leave from the University until further notice pending the release of his medical records.

Plaintiff filed a second charge of discrimination alleging that the request for medical records was in retaliation for Plaintiff's filing of Charge # 1.("Charge # 2"). On April 6, 1995, Plaintiff's employment was terminated because he had failed to release his medical records as ordered by his commanding officer.

Plaintiff filed a third charge of discrimination on April 10, 1995, alleging that his termination was in retaliation for filing Charges 1 and 2. ("Charge # 3"). On May 3, 1995, Plaintiff filed an action against Defendant in the Court of Common Pleas for Cuyahoga County under Ohio Revised Code § 4112.99, alleging that he was wrongfully discharged in retaliation for filing the charges of discrimination with the OCRC and seeking a temporary restraining order followed by a preliminary and permanent injunction ordering Defendant to reinstate Plaintiff to full pay status with all benefits pending resolution of Plaintiff's Complaints with the OCRC. The Court of Common Pleas dismissed Plaintiff's Complaint with prejudice. On June 26, 1996, Plaintiff filed the instant action in this Court. Specifically, Plaintiff alleges that Defendant retaliated against him for filing charges of discrimination, violated his rights under the ADA because he refused turn over medical records and discriminated against him because of his age.

### Summary Judgment Standard

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49, 106 S.Ct. at 2510–11, 91 L.Ed.2d 202 (1986).) Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street*

*v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation*, 53 F.3d 146, 149 (6th Cir.1995). The text of FRCP 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510–11. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

## Discussion

Defendant contends that it is entitled to judgment as a matter of law because Plaintiff's claims are barred by the doctrine of *res judicata*. Further, even if *res judicata* is not applicable, Defendant argues that it is entitled to summary judgment on Plaintiff's discrimination claims. Plaintiff contends that his claims are not barred by the doctrine of *res judicata* and that Defendant is not entitled to summary judgment on Plaintiff's claims.

## I.   The Doctrine of *Res Judicata*

■ Defendant contends that the instant action is barred by the judgment of the Court of Common Pleas entered on April 1, 1996, in the case captioned *Terry Shane Metzenbaum v. John Carroll University*, Case No. 288859. The parties in the Common Pleas case and this case are identical and both cases arise out of the same set of facts.

■ Since an Ohio court issued the judgment which Defendant contends bars this action, *Ohio's res judicata* principles apply to determine whether this action is barred under the doctrine of *res judicata*. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). Under the modern application of the doctrine of *res judicata* as adopted by the Ohio Supreme Court, a valid final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. *Grava v. Parkman Township*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995) (Syllabus).

Plaintiff asserts that the Common Pleas judgment does not bar this action because Defendant waived the defense of *res judicata* by not raising it in its answer and the judgment issued in the Common Pleas action was not on the merits. Contrary to Plaintiff's position, Defendant did raise the defense of *res judicata* in its amended answer which was filed with leave of the Court on February 5, 1997. Accordingly, Defendant has not waived the defense of *res judicata*.

Plaintiff's position that the Common Pleas judgment was not on the merits because it

did not reach the merits of his claims for age and disability discrimination is misplaced. Plaintiff contends that the Common Pleas Court addressed only his claim for injunctive relief which did not include his claims of discrimination. One of the elements which the Common Pleas Court addressed in ruling on Plaintiff's request for injunctive relief was Plaintiff's likelihood of succeeding on the merits of his discrimination and retaliation claims. After a hearing at which Plaintiff was permitted to submit evidence, the Court determined that Plaintiff failed to establish any basis for injunctive relief, including that he had any likelihood of succeeding on the merits. The Court dismissed Plaintiff's Complaint in its entirety. Plaintiff's failure to seek relief in addition to injunctive relief in Common Pleas Court does not prevent the application of the *res judicata* doctrine. Plaintiff could have requested damages under § 4112 which may have prolonged his state court action until after the EEOC issued its final right to sue letter. At that point Plaintiff could have amended his complaint to add his Title VII and ADEA and ADA claims. The doctrine of *res judicata* as adopted by the Ohio Supreme Court clearly bars Plaintiff from filing multiple lawsuits based upon the same facts and occurrences, especially since all of the claims could have been presented in one lawsuit. In adopting the application of the doctrine of *res judicata* as stated in 1 Restatement of the Law 2d, Judgments (1982), §§ 24–25, the Ohio Supreme Court quoted Comment c to Section 24 with approval as follows:

> That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.

*Grava*, 73 Ohio St.3d at 382, 653 N.E.2d at 228. Thus, the Ohio Supreme Court held that *res judicata* acts as a bar even though a plaintiff is prepared in a second action "to present evidence or grounds or theories of the case not presented in the first action or

to seek remedies or forms of relief not demanded in the first." *Id.* Accordingly, the prior decision of the Court of Common Pleas acts as a bar to this action.

## II. Defendant's Request of Plaintiff's Medical Records

■ Even if the doctrine of *res judicata* does not bar this action, Defendant maintains that it is still entitled to summary judgment on Plaintiff's Complaint. Plaintiff claims that Defendant's requirement that Plaintiff release his current medical records prior to allowing him to return to work violates the ADA. Defendant contends that it was legally permitted to request Plaintiff's medical records because it was felt that Plaintiff might pose a threat to the safety of people he was hired to protect. When Plaintiff refused to produce the requested records, Defendant maintains it had the right to terminate Plaintiff's employment.

The ADA permits employers to make inquiries or require medical examinations when there is a need to determine whether an employee is still able to perform the essential functions of his job. 42 U.S.C. § 12112(d)(4); 29 C.F.R. § 1630.14(c). Moreover, an employer is entitled to set qualification standards for specific jobs. The regulations define "qualification standard" as "the personal and professional attributes . . . established by a covered entity as requirements which an individual must meet in order to be eligible for the position held or desired". 29 C.F.R. § 1630.2(q). The 'qualification standard" may include a requirement that an individual shall not pose a direct threat to the health or safety of the individual or others in the workplace." 29 C.F.R. § 1630.15(b)(2).

Plaintiff acknowledges these provisions but contends that Defendant has not demonstrated that "campus police officer shall not be a direct threat" was a written qualification in the employee handbook. That campus police officers not pose a direct threat is an obvious qualification that need not be written down or published in a handbook to apply.

Plaintiff also asserts that Defendant's request for his recent medical records was unreasonable because it was based on the

observations of the University's counsel made at the March 17, 1995, hearing before Judge Aldrich. The University's counsel reported to Father Salmi that Plaintiff's counsel stated that Plaintiff was under treatment by physicians and would be irreparably harmed if he lost his health insurance as a result of being discharged or suspended. The University's counsel also observed the Plaintiff behaving strangely at the hearing-slurring his speech, sleeping and threatening the University's counsel. Plaintiff does not dispute the accuracy of the observations of the University's counsel, rather, he contends that since the observations were made by the University's counsel in a "contentious and adversarial lawsuits", the observations cannot serve as the basis for justifying action on the part of Defendant.

It is not unreasonable for Father Salmi to act and rely upon the observations of the University's counsel, particularly when he is responsible for insuring the competency and fitness of the campus police officers who protect and maintain the safety of the University's students and staff. Father Salmi also consulted Mr. Ivec regarding Plaintiff's situation. Mr. Ivec reviewed Plaintiff's personnel file, including the medical records contained in the file, and determined that the medical records from 1990 and 1993 were outdated. Father Salmi determined that in light of Plaintiff's counsel's statements at the hearing regarding his medical treatment and Plaintiff's bizarre behavior, it was necessary to obtain Plaintiff's most recent medical records to determine if Plaintiff was fit for duty, and to determine whether he posed a direct threat to students or others if he was placed in the position of campus police officer with all of the attendant duties and responsibilities. Father Salmi also decided that Plaintiff would be discharged if he refused to release the medical records within a reasonable time. Father Salmi's decisions were not unreasonable given the facts presented to him.

Finally, Plaintiff argues that Defendant treated him as having a disability by requesting his medical records without any factual support for requesting the documents. As noted above there was factual support for requesting Plaintiff's most recent medical records. Moreover, the University requested the records, not because Plaintiff had a disability, but because it had reason to suspect that Plaintiff may pose a "direct threat". The records were necessary to determine if Plaintiff posed a direct threat. Similarly, Plaintiffs statement that Defendant requested the medical records to reach a reasonable accommodation is misplaced. Accommodation is clearly not an issue in this case since the Defendant was unaware whether Plaintiff had a disability and was merely trying to establish whether Plaintiff posed a direct threat and thus was unfit for duty. Defendant was entitled to request Plaintiff's recent medical records in light of Plaintiff's counsel's representations at the hearing and Plaintiffs strange behavior at the hearing.

### III. Plaintiff's Retaliation Claims

In Counts 1–3 Plaintiff alleges that Defendant retaliated against him for participating in activity that is protected under Title VII, the ADEA and the ADA. Specifically, Plaintiff alleges in Count 1 that he was reprimanded and suspended because he filed a complaint against Dr. Morehead with the Ohio Psychology Board; and in Counts 2–3 that his medical records were requested and he was terminated because he filed charges with the EEOC and the OCRC.[3]

Retaliation claims, like discrimination claims, are analyzed under the *McDonnell Douglas* burden shifting analysis. *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064 (6th Cir.1990), *cert. denied*, 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990), *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 375 (6th Cir.1984) Initially, a plaintiff must

---

**3.** Count 4 alleges that the action of Defendant in terminating and failing to reinstate Plaintiff was retaliatory in nature and was based on Plaintiff's perceived disability in violation of Title VII and Ohio Rev. Statute § 4112.02(A) and (I). Title VII, which applies to discrimination on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e–2(a), is not applicable in this action. § 4112.02 applies to handicap discrimination and prohibits retaliation for engaging in protected activity. § 4112.02(I). Ohio courts turn to federal law for the analysis of retaliation claims. *Chandler v. Empire Chem. Inc.*, 99 Ohio App.3d 396, 402, 650 N.E.2d 950 (Summit Cty 1994). Accordingly, Counts 1–4 may be analyzed together.

<br>

**617**

establish a prima facie case of retaliation by proving: (1) that he engaged in activity protected under the statutes (Title VII, ADA, ADEA, § 4112); (2) that he was the subject of adverse employment action; and (3) that there is a causal link between the protected activity and the adverse action of the employer. *Jackson*, 743 F.2d at 374–75. If the plaintiff successfully establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. If the defendant comes forward with such a reason and rebuts the prima facie case, the plaintiff must then establish that the nondiscriminatory reason articulated by the defendant was a mere pretext for the alleged discriminatory action. *Jackson*, 743 F.2d at 374; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

### A. Count 1

■ Defendant contends that Plaintiff has failed to establish a prima facie case with respect to Count 1 because Plaintiff was not engaged in activity protected by Title VII, the ADEA, the ADA or § 4112. The basis of Plaintiff's complaint in Count 1 is that he was reprimanded and suspended in retaliation for his filing of a complaint against Dr. Morehead with the Ohio Psychology Board. Plaintiff did not file a charge against *Defendant* pursuant to the administrative requirements of Title VII, the ADEA, the ADA or § 4112. Rather, he filed a complaint with the Ohio Psychology Board regarding Dr. Morehead's actions with respect to a report that Dr. Morehead completed regarding Plaintiff. Plaintiff objected to the accuracy of portions of the report. Plaintiff does not object to his having to submit to a psychological examination by Dr. Morehead or to the release of the report. Rather, Plaintiff

states that he objects to the release of a partially inaccurate report. Plaintiff contends that he has a right that the report be accurate. The accuracy of the report is an issue between Plaintiff and Dr. Morehead. Thus, Plaintiff has clearly failed to prove a prima facie case of retaliation *by Defendant* with respect to Count 1.

### B. Counts 2–4

■ For purposes of its summary judgment motion, Defendant assumes that Plaintiff can establish a prima facie case of retaliation as set forth in Counts 2–4.[4] Defendant contends that it has articulated a legitimate, non-discriminatory reason for requesting Plaintiff's recent medical records and that Plaintiff cannot show that its articulated reason was a pretext. As discussed above, Defendant was justified in seeking Plaintiff's recent medical records in light of the report from its attorneys that Plaintiff's behavior was strange and Plaintiff's counsel's representation that Plaintiff was receiving medical treatment and would be irreparably harmed if he lost his medical insurance. Since Defendant's request was reasonable, especially in connection with Plaintiff's safety sensitive position, it was also reasonable for Defendant to terminate Plaintiff for his failure to release his medical records.

Plaintiff contends that Defendant's request for medical information is not supported by a legitimate business necessity when there is no evidence to suggest that Plaintiff was unable to perform his duties or was a direct threat. As discussed earlier in this Opinion, there is evidence in the record to support Defendant's request for recent medical information. Moreover, Plaintiff's contention that Defendant failed reasonably to inquire into Plaintiff's personnel file before singling him out for disparate treatment is baseless. Plaintiff's existing personnel file did not contain recent medical records. The Defendant

4. Defendant has not addressed the state law retaliation claim in Count 4. As noted in footnote 3, supra, the legal analysis is the same for retaliation claims brought pursuant to state and federal law. Accordingly, the Court will analyzed the retaliation claims in Counts 2, 3 and 4 together. In a further cautionary note, Defendant should note that its decision to presume that Plaintiff would establish a prima facie case may be dangerous in light of the Sixth Circuit's recent decision in *EEOC v. Avery Dennison Corp.*, 104 F.3d 858 (6th Cir.1997). In that case the Court determined that whether or not a plaintiff made a prima facie case may not be revisited after the case proceeds to trial. *Id.* at 863.

618

needed the most recent medical information on Plaintiff's condition to determine if he was a direct threat since the troublesome representations by Plaintiff's counsel and Plaintiff's own disturbing behavior occurred at the March 17 hearing, after Plaintiff was suspended. Finally, it is clear that Plaintiff was not singled out for disparate treatment. Plaintiff makes no allegation that any other campus police officer refused to release the report of their psychological examination, or that any other campus police officer engaged in any disturbing behavior coupled with information that he was currently under medical treatment for unknown maladies. Plaintiff's contentions do not rebut Defendant's articulated non-discriminatory reasons for its actions nor do they create a genuine issue of material fact regarding whether Defendant's articulated reasons for requesting Plaintiff's recent medical records were pretexts for retaliation.

## IV. Age Discrimination Claim

■ Defendant asserts that the Court lacks jurisdiction over Plaintiff's age discrimination claim because Plaintiff only checked the box for retaliation and failed to check the box for age discrimination in his filings with the EEOC and OCRC.[5] The ADEA requires that a plaintiff file a charge of discrimination with the EEOC as a prerequisite to filing a claim in court. 29 U.S.C. 626 § (d). A court's jurisdiction over a plaintiff's claim is limited to the claims in the EEOC charge and those claims reasonably expected to grow out of the EEOC charge. *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.1992); *Ang v. Procter & Gamble Co.*, 932 F.2d 540 (6th Cir.1991). Administrative complaints, which are filed by lay complainants, should by liberally construed. *Haithcock*, 958 F.2d at 675.

In this case it is clear that Plaintiff did not complain about age discrimination in his charges to the EEOC or the OCRC, nor does it appear that the EEOC investigated any age claim. Thus it cannot be reasonably

expected that an age claim could grow out of Plaintiff's EEOC charge. Accordingly, Plaintiffs age claim should be dismissed.

■ Even if the Court had jurisdiction over Plaintiff's age claim, Defendant would be entitled to summary judgment on the claim. As in Title VII and ADA cases, courts apply the *McDonnell Douglas* evidentiary framework to determine if a plaintiff has offered enough circumstantial evidence to infer discrimination. *See Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325 (6th Cir. 1994). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of proving a prima facie case of age discrimination. In this case, Defendant has once again presumed that Plaintiff could establish the prima facie case. Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to rebut the presumption of discrimination by producing a legitimate, nondiscriminatory reason for its decision. "The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Cooley*, 25 F.3d at 1329.

If the prima facie case is so rebutted by the defendant, the plaintiff then has the burden to prove by the preponderance of the evidence that the proffered reasons were not the true reasons, but in fact, constituted a pretext for intentional discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Cooley*, 25 F.3d at 1329.

As discussed before in the context of Plaintiff's ADA claim, Defendant's reasons for requesting Plaintiff's medical records and terminating him were legitimate, non-discriminatory reasons which rebutted any inference of discrimination. Plaintiffs evidence of age discrimination consists of his allegation that Defendant gave two campus police officers under the age of 40 a hearing before they were disciplined whereas Plaintiff was

5. Defendant originally contended that the Court lacked jurisdiction over Plaintiff's disability claims for the same reason—that he did not check the disability box on the charge form. Defendant appears to have abandoned this argument as to disability in light of Plaintiff's response that the complaint issued by the OCRC shows that disability was investigated as a complaint item and thus a disability claim could grow out of the charge.

not offered a hearing before he was disciplined. In order to use disparate treatment to prove that an employer's reasons for an employment action were pretextual, a plaintiff must produce evidence that other employees, particularly employees not in the protected class, were treated less harshly than the plaintiff even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

It is clear that the circumstances surrounding the discipline of the younger officers were substantially different than the situation involving Plaintiff. The Defendant asserts that the two younger police officers were given a hearing prior to discipline because there were disputed facts as to which officer was to blame. Moreover, Defendant contends that Plaintiff never requested a hearing. Defendant submits the affidavit of J. Francis McCaffrey, Plaintiff's supervisor, who testified that he has had occasion to discipline officers under age 40 and that hearings were convened in some cases and not in others. Mr. McCaffrey states that "age does not enter into the decision to grant a hearing." (McCaffrey Aff. ¶ 4) Plaintiff was not given a hearing in this case because there were no facts in dispute. Neither party disputes that Plaintiff was discharged for failing to disclose his recent medical records. Accordingly, Mr. McCaffrey states that there was no need for a hearing. (McCaffrey Aff. ¶ 3)

Plaintiff appears to contend that Defendant's alleged lack of a defined policy of grievance procedures creates an issue of fact concerning whether the Defendant's failure to give him a hearing was motivated by age. Specifically, Plaintiff contends that Defendant's Handbook does not comply with 42 U.S.C. § 6101 *et seq.* and the regulations promulgated thereunder.[6] Plaintiff complained to the U.S. Department of Education, Office of Civil Rights ("OCR") regarding Defendant's alleged failure to designate a coordinator to address complaints filed under the Age Discrimination Act, adopt grievance procedures and provide pre or post termination hearings. The OCR closed Plaintiff's complaint finding that Defendant had designated a person to address complaints under the Act; that the Handbook stated grievance procedures; and, that the OCR did not have jurisdiction over pre or post termination hearing issues. The OCR sent Plaintiff another letter after Plaintiff sought review of their first investigation informing Plaintiff that the OCR had further investigated Plaintiff's allegations and had "provided technical assistance to the University by providing further guidance in complying with the Act." The letter also noted that the University's grievance and appeals procedures will be clarified to comply with the Act. These letters from the OCR clearly do not constitute evidence of age discrimination. Certainly the first letter indicates that Defendant was in compliance with the Act and the second letter indicates that the Defendant has undertaken to bring its procedures into technical compliance with the Act. There is nothing in the two letters which can be construed to support Plaintiffs theory that Defendant refused to give him a pre or post disciplinary hearing because of his age. Nor do the letters constitute a finding in Plaintiff's favor. This evidence does not demonstrate that Defendant's reasons for requesting Plaintiff's medical records and terminating him for his failure to produce them were pretexts for age discrimination.

### Conclusion

Pursuant to the foregoing opinion, no genuine issues of material fact remain to be litigated and Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment

---

6. In Count 5 of his Complaint, Plaintiff asserts that Plaintiff's actions in terminating Plaintiff (i.e., Defendant's grievance and hearing procedures) failed to comply with the Age Discrimination Act of 1975, as amended, 42 U.S.C. § 6101 *et seq.* This claim will be dismissed because there is no allegation that Plaintiff has complied with all of the required administrative requirements. Before filing an action in federal court, the complainant must give thirty days notice by registered mail to the Secretary, the Attorney General, the head of the granting agency, and the grant recipient. 42 U.S.C. § 6104(e)(2); 45 C.F.R. § 90.50(b)(3)(iv). Moreover, the OCR letters do not indicate a finding in favor of Plaintiff or no finding.

(Document # 25) is GRANTED and the case is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.