John A. FARMILOE Plaintiff

v.

FORD MOTOR COMPANY Defendant

No. 1:98 CV 2903.

United States District Court,
N.D. Ohio,
Eastern Division.

Oct. 17, 2002.

James M. Lyons, Lyons & O'Donnell, Painesville, OH, for Plaintiff.

Joy M. Evans, Kristin J. Jakiel, Thomas A. King, Jr., Baker & Hostetler, Cleveland, OH, for Defendant.

*MEMORANDUM OF OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

WELLS, District Judge.

On 19 November 1999, defendant Ford Motor Company ("Ford") filed a motion for summary judgment. This Court referred the case to United States Magistrate Judge Nancy Vecchiarelli for a report and recommendation ("R & R") on the motion for summary judgment. On 23 March 2001, the Magistrate Judge in her R & R recommended that the motion for summary judgment be denied. Ford timely filed objections to the R & R. For the reasons stated below, the Magistrate Judge's R & R will be adopted, and Ford's motion for summary judgment will be denied.

This matter involves whether Ford may request as a prerequisite to employment, the complete medical record of a former employee who was retired due to disability and who is seeking to return to work after his disability ceases.

## I. Background

Mr. John A. Farmiloe brought this case under the Americans with Disabilities Act of 1990 (the "ADA").

Mr. Farmiloe was an hourly production employee at the Walton Hills Stamping Plant of Ford from approximately 1964 to January 1988. (Pl.Aff.¶ 4.) During his employment with Ford, he took medical leaves due to "nerves" in 1974 (Pl.Dep.110) and medical leaves due to valium addiction, anxiety and depression in 1983 (Rollins 1st Aff. ¶ 6 & 7). In January 1988, Ford granted Mr. Farmiloe a disability retirement due to his back and neck conditions and ulcerative colitis. (Rollins 1st Aff. ¶ 9.)

Mr. Farmiloe was and is a member of the United Auto Workers Union (the "UAW") that represents the manufacturing employees working for Ford. (Pl. Aff.¶ 6.) The collective bargaining agreement between the UAW and Ford includes provisions for a disabled employee who is no longer disabled to return to work. (Pl. Aff.¶ 6.) An interoffice memorandum from Ford on 26 July 1990 established certain procedures to govern the application process for a disabled retiree seeking to return to work ("Ford Interoffice Memorandum"). (Pl. Resp. Def.'s Mot. Summ. J. Ex. 1.)

Mr. Farmiloe has made several attempts to go back to work since 1991. In October 1991, Mr. Farmiloe presented the Ford plant doctor, Dr. Arlen Rollins, with a return to work form from his physician, Dr. Papa. Dr. Papa stated in the release that Mr. Farmiloe had chronic injuries which could be aggravated by working. (Rollins 1st Aff. ¶ 10 & 11.) In November 1991, Mr. Farmiloe again met with Dr. Rollins regarding his return to work. At that meeting, Dr. Rollins learned that Mr. Farmiloe had been to some Alcoholics Anonymous meetings. (Rollins 1st Aff. ¶ 13.) Dr. Rollins requested Mr. Farmiloe fill out a medical form authorizing the release of his complete medical records, including psychiatric records from Kaiser Permanente, Mr. Farmiloe's medical provider. Mr. Farmiloe initially complied with the request, but eventually revoked

his consent before Dr. Rollins obtained the medical records. (Rollins 1st Aff. ¶ 14–17.) In January 1992, Mr. Farmiloe presented another release to return to work from Dr. Saran, a psychiatrist with Kaiser Permanente. (Rollins 1st Aff. ¶ 18.)

In March 1997, Ms. Marie Stauffer–Rossi, a chiropractor, examined Mr. Farmiloe and diagnosed him with lumbar segmental dysfunction and treated him accordingly. She concluded that Mr. Farmiloe had responded favorably to treatment and could return to work without restrictions. (Def.Mot.Summ. J. Ex. I.) In April 1997, Mr. Farmiloe's attorney, Mr. James Lyons wrote letters to the Walton Hills Labor Relations and the local union president on behalf of Mr. Farmiloe. In the letters, Mr. Lyons tried to establish that Mr. Farmiloe had followed the procedures laid out in the Ford Interoffice Memorandum. (Def. Mot. Summ. J. Ex. K & L.)

In November 1997, Dr. Alan Kravitz, a physician associated with John Hancock, Ford's disability insurance administrator, examined Mr. Farmiloe. Dr. Kravitz opined that Mr. Farmiloe was no longer disabled and could return to work. (Def.Mot.Summ. J. Ex. M.) John Hancock notified Mr. Farmiloe that ·his disability benefits were terminated on 18 November 1997. (Def.Mot.Summ. J. Ex. N.)

On 4 December 1997, Ms. Barbara Eady, a psychiatric social worker employed by Kaiser Permanente, evaluated Mr. Farmiloe for a psychiatric intake assessment. Ms. Eady stated in her report that Mr. Farmiloe presented no behavior during her examination that would interfere with working. Ms. Eady advised Mr. Farmiloe not to release his psychiatric records. (Pl. Resp. Def.'s Mot. Summ. J. Ex. 2, Eady Aff. ¶ 4.) Mr. Farmiloe informed Dr. Rollins that he believed that, under the ADA, he did not have to release his medical and psychiatric records as requested by Dr. Rollins. Mr. Farmiloe again re-fused to release his medical and psychiatric files. (Rollins 1st Aff. ¶ 30.)

On 17 March 1998, Mr. Farmiloe filed a complaint with the U.S. Equal Employment Opportunity Commission (the "EEOC"), claiming age discrimination (he was 55 years old in 1998) and violation of ADA by Ford. (Pl. Resp. Def.'s Mot. Summ. J. Ex. 15.) The EEOC issued a right to sue letter to Mr. Farmiloe on 11 August 1998. (Compl. Ex. A.)

On 15 December 1998, Mr. Farmiloe brought the instant lawsuit, which he amended on 2 July 1999, claiming violation of ADA (count I), violation of the Age Discrimination in Employment Act of 1967 (count II), and breach of the agreement between Ford and the United Auto Workers Union (count III). (Docket no. 1, 11.) Mr. Farmiloe dismissed Count II and III on 13 January 2000, after Ford filed its Motion for Summary Judgment on 19 November 1999. (Docket no. 17, 32.) On the remaining Count, Mr. Farmiloe claims that Ford violated the ADA by refusing to rehire him, and, as a precondition to rehiring him or returning him to work, requiring that he give Ford all of his medical records.

## II.    The R & R and Ford's Objections to It

Magistrate Judge Vecchiarelli, in her R & R, finds that Mr. Farmiloe is not an employee of Ford because he is not on Ford's payroll, nor is he an employee under traditional agency principles. According to the Magistrate Judge, Mr. Farmiloe is a post-offer pre-employment applicant who has certain rights under the agreement between UAW and Ford that non-disability retirees do not enjoy, namely the right to return to work when his disability ceases and a position becomes available.

Treating Mr. Farmiloe as a post-offer pre-employment applicant, Magistrate

Judge Vecchiarelli recommends Ford's motion for summary judgment be denied for the following reasons: that the evidence in the record is insufficient to support Mr. Farmiloe's alleged history of mental problems; that Ford's request for Mr. Farmiloe's medical and psychiatric records far exceeds the scope of Ford's legitimate concern over Mr. Farmiloe's problems; and that Ford fails to demonstrate that "all entering employees are subjected to such an examination regardless of disability . . . ."

Ford filed an objection to Magistrate Judge Vecchiarelli's R & R, arguing that Mr. Farmiloe is analogous to an employee returning to work from medical leave; that Ford's request for Mr. Farmiloe's entire mental health record is based upon Ford's review of Mr. Farmiloe's past medical file with Ford; that such a request is reasonable under the ADA; and that Ford reviews all of the returning disability retirees' medical files and regularly requests non-disability retirement related medical records.

Under Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court reviews de novo the portion of the Magistrate Judge's R & R to which specific objection was made. This Court agrees with Magistrate Judge Vecchiarelli that Mr. Farmiloe's status is analogous to a post-offer pre-employment applicant, and that the record does not support a summary judgment in favor of Ford.

### III. Analysis

Summary judgment is proper if the court finds that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In this case, Ford claims that its request for Farmiloe's complete medical records was job-related and consistent with business necessity, which is a defense on which Ford bears the burden of proof. Because Ford is the movant and Ford also has the burden of proof on this issue, Ford must establish that there are no genuine disputes on any material facts relating to this defense, and that Ford prevails as a matter of law. Ford does not contend that Mr. Farmiloe has not established his prima facie case of discrimination under the ADA,[1] therefore the prima facie case is not an issue for the purpose of deciding this summary judgment motion.

### A. Employee or Applicant

The ADA treats persons at different stages of the job application process differently:

▮ (1) Before an employer makes a job offer, he or she may not conduct a

---

1. To establish a prima facie case of discrimination under the ADA, a plaintiff must show that he or she is (1) a disabled person within the meaning of the Act, (2) that he/she is otherwise qualified to perform the essential functions of his/her job with or without rea-

sonable accommodation, and (3) that he/she suffered an adverse employment decision due to his/her disability. *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997).

medical examination or make inquiries as to the job applicant's disability status. The employer is allowed, though, to inquire into the applicant's ability to perform job-related functions. 42 U.S.C. § 12112(d)(2).

(2) After a job offer has been made, and before the applicant starts working, the employer may require a medical examination and condition the employment offer on the results of the medical examination, if all entering employees are subjected to such an examination regardless of disability, and the employers keep the medical information confidential. 42 U.S.C. § 12112(d)(3). (An applicant in this situation may be referred to as a "post-offer pre-employment applicant.")

(3) An employer may require medical examinations or make inquiries of employees as long as the employer can show that such examinations or inquiries are job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4).

For the purpose of deciding this summary judgment motion, whether Mr. Farmiloe's status is a pre-offer applicant, a post-offer pre-employment applicant, or an employee is not critical because under any of these categories, Ford has failed to establish that it is entitled to a summary judgment in its favor. However, because the issue of Mr. Farmiloe's status has been raised in the summary judgment motion and the objections to the R & R, the Court will briefly discuss the issue.

Ford argues that Mr. Farmiloe's situation is analogous to an employee returning to work from medical leave. However, as Magistrate Judge Vecchiarelli points out, Mr. Farmiloe is neither on Ford's payroll nor an employee under the traditional principles of agency law. Mr. Farmiloe is a disability retiree, as referred to by Ford, who has not worked for Ford for more than ten years. "Unlike a person on medical leave, Farmiloe cannot return to his job as soon as his medical condition improves." (R & R p. 12). Mr. Farmiloe has to go through the job application process in order to obtain a position at Ford, which is inconsistent with the status of an employee. Therefore, he is not an employee of Ford.

In Mr. Farmiloe's situation, the line between an applicant and a post-offer pre-employment applicant is not clear. Magistrate Judge Vecchiarelli finds that Mr. Farmiloe is more like a post-offer applicant than an applicant without an offer, because the bargaining agreement between the UAW and Ford gives Mr. Farmiloe the right to return to work when his disability ceases and a position becomes available. This Court is persuaded by the Magistrate Judge's reasoning and agrees that Mr. Farmiloe is a post-offer pre-employment applicant.

## B. Job-related Inquiry (Pre–Offer Applicant and Employee)

■■■ Ford argues that its request for Mr. Farmiloe's complete medical records is job-related and consistent with business necessity. Although inquiry as to the ability of a pre-offer applicant or an employee to perform job-related functions is allowed under the ADA, such inquiry is not without limits. "[T]he ADA limits an employer's ability to request unfounded examination to prevent 'the unwanted exposure of the employee's disability and the stigma it may carry.'" *Sullivan v. River Valley School District*, 197 F.3d 804, 812 (6th Cir.1999). The employer may not request "wide-ranging assessments of mental or physical debilitation that could conceivably affect the quality of an employee's job performance." *Id.*

The EEOC's stated position on the scope of medical inquiry is that an employer may not request an employee's complete medical records under the disguise of

job-relatedness and business necessity. In addressing the scope of medical information that an employer may obtain about an employee, the EEOC states:

> An employer is entitled only to the information necessary to determine whether the employee can do the essential functions of the job or work without posing a direct threat. This means that, in most situations, *an employer cannot request an employee's complete medical records* because they are likely to contain information unrelated to whether the employee can perform his/her essential functions or work without posing a direct threat.

EEOC Enforcement Guidance: Disability–Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act, Question 13 (July 27, 2000) (emphasis added).[2]

The EEOC further states:

> Employers that require physical agility or physical fitness tests may ask an employee to have a physician certify whether s/he can safely perform the test. In this situation, however, the employer is entitled to obtain only a note simply stating that the employee can safely perform the test or, alternatively, an explanation of the reason(s) why the employee cannot perform the test. *An employer may not obtain the employee's complete medical records* or information about any conditions that do not affect the employee's ability to perform the

physical agility or physical fitness test safely.

*Id.* Question 14 (emphasis added).

In another guidance, the EEOC gives the following example:

> An employee with depression seeks to return to work after a leave of absence during which she was hospitalized and her medication was adjusted. Her employer may request a fitness-for-duty examination because it has a reasonable belief, based on the employee's hospitalization and medication adjustment, that her ability to perform essential job functions may continue to be impaired by a medical condition. This examination, however, must be limited to the effect of her depression on her ability, with or without reasonable accommodation, to perform essential job functions. *Inquiries about her entire psychiatric history or about the details of her therapy sessions would, for example, exceed this limited scope.*

EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities, Question 14, example D (March 25, 1997) (emphasis added).[3]

Though the EEOC guidance is not binding law, it aids the interpretation of the ADA by providing a detailed analysis of the relevant ADA provisions. *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667, 673 (1st Cir.1995).

Ford claims that Dr. Rollins had a reasonable belief, based on Mr. Farmiloe's medical file at Ford[4] and Dr. Rollins' conversations with Mr. Farmiloe, that Mr. Farmiloe might have difficulty performing his job functions.[5] This belief, however,

2. Retrievable at http://www.eeoc.gov/docs/guidance-inquiries.html.

3. Retrievable at http://www.eeoc.gov/docs/psych.html.

4. Ford claims that it was alerted to Mr. Farmiloe's psychiatric problems because he took medical leaves due to his "nerves" in 1974 and medical leaves due to valium addiction, anxiety and depression in 1983. However,

both leaves were short in duration, and Mr. Farmiloe continued to work at Ford until 1988.

5. In its objections to the R & R, Ford relies on a report from Dr. Collins, a physician from the Cleveland Clinic Foundation Alcohol and Drug Recovery Center. Dr. Collins interviewed Mr. Farmiloe on 16 October 2000, after this lawsuit had been commenced. The

does not give Ford the right to obtain Mr. Farmiloe's complete medical and psychiatric records. The inquiry must be limited to the suspected impairments, namely what Ford alleges are Mr. Farmiloe's valium addiction and drug abuse problems. Ford made no demonstration that Mr. Farmiloe's entire medical and psychiatric records are solely about his valium addiction, drug abuse problems, or his physical conditions related to his disability retirement.

Ford's reliance on the following two cases is misplaced. In *Grenier*, 70 F.3d at 674, the First Circuit affirmed summary judgment in favor of the employer, holding that the employer's pre-offer request of a medical certification from a physician did not violate the ADA. In *Harris v. Harris & Hart, Inc.*, 206 F.3d 838, 840 (9th Cir. 2000), the Ninth Circuit affirmed summary judgment in favor of the employer, holding that the employer's request that Mr. Harris, a former employee with a known disability, provide a medical release from a physician was appropriate. In both cases, the medical inquiries were limited in scope. The employers in these cases only required a letter from a physician stating that the job applicant had the ability to perform the essential job functions. In this case, Ford's inquiry is not limited to a medical certification from a physician, or medical records related to the alleged impairments. Instead, Ford's inquiry is unlimited in scope.

Because Ford failed to show that its request for Mr. Farmiloe's complete medical and psychiatric records is job-related, summary judgment in favor of Ford is unwarranted whether Mr. Farmiloe is treated as a pre-offer applicant or an employee.

## C. Ford's Claim of Making Unlimited Medical Inquiry to All Disability Retirees (Post–Offer Pre–Employment Applicant)

■ Under the ADA, a post-offer pre-employment applicant may be subjected to a medical examination if all entering employees are subjected to such an examination regardless of disability. 42 U.S.C. § 12112(d)(3). The EEOC regulations state that a medical examination or inquiry is allowed as to a post-offer pre-employment applicant "if all entering employees *in the same job category* are subjected to such an examination (and/or inquiry) regardless of disability." Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, 29 C.F.R. § 1630.14(b) (2002) (emphasis added). Ford argues that "[i]f Farmiloe is a post-offer pre-employment applicant, Ford may make unlimited medical inquiries so long as all disability retirees are subject to the same inquiry." (Ford's Objections to R & R, p. 1). However, disability retiree is not a job category. Ford has not demonstrated that employees in the same job category that Mr. Farmiloe was applying to are subjected to the unlimited medical inquiry to which Mr. Farmiloe was subjected.

Furthermore, even as to disability retirees, Ford fails to show that all disability retirees are subjected to unlimited medical inquiries. In Dr. Rollins' affidavit, he states that he "usually request[s] the disability retiree's personal medical records that relate to the condition that prompted the disability retirement to ensure that the condition has in fact been alleviated." (Dr. Rollins 2nd Aff. ¶ 25). He further states that he "also check[s] to be sure that there are no other health conditions that will prevent the disability retiree from safely

---

interview was for the purpose of the lawsuit. At the time Dr. Rollins requested Mr. Farmiloe's complete medical record, he did not have the benefit of Dr. Collins' report.

returning to work or that will need accommodation upon a return to work." (Dr. Rollins 2nd Aff. ¶ 27). It is not at all clear from these statements that the medical inquiries Dr. Rollins made as to other disability retirees were unlimited in scope or that a retiree's complete medical records were requested.

Thus, if Mr. Farmiloe is a post-offer pre-employment applicant under the ADA, Ford's summary judgment motion cannot be granted as it has failed to show that all entering employees in "the same job category" are subjected to a request for their complete medical records.

### IV. Conclusion

For the reasons stated above, the Magistrate Judge's R & R is adopted, and Ford's motion for summary judgment is denied.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

VECCHIARELLI, United States Magistrate Judge.

This matter is before the Magistrate Judge pursuant to an order from Judge Wells, in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1, referring the matter for a Report and Recommendation on Ford Motor Company's ("defendant's" or "Ford's") Motion for Summary Judgment. For the reasons set forth in detail below, the Magistrate Judge recommends that the defendant's Motion for Summary Judgment (Doc. No. 13) be DENIED.

### Procedural History

John A. Farmiloe ("plaintiff" or "Farmiloe") filed a complaint in this Court on December 15, 1998 and an amended complaint on July 2, 1999. (Doc. Nos.1, 9.) Plaintiff dismissed Counts II (age discrimination) and III (breach of contract) of his amended complaint after the defendant filed its Motion for Summary Judgment. Count I, which is the only remaining count, alleges discrimination under the Americans with Disabilities Act.

### Factual Background

For purposes of this Motion for Summary Judgment, the Court treats the following facts as true.[1]

Farmiloe began working for Ford as an hourly production employee in Walton Hills Stamping Plant in approximately 1963 or 1964. (Defendant's Motion for Summary Judgment [hereinafter "Defendant's Motion"], Farmiloe Depo., p. 9; Plaintiff's Response to Defendant's Motion for Summary Judgment [hereinafter "Plaintiff's Response"], Farmiloe Affidavit, ¶ 4.) During the early part of 1983, Farmiloe took medical leave from Ford due to dependence on valium and ulcerative colitis. (Defendant's Motion, Rollins Aff., ¶ 6.)

1. This Court has used its best efforts to discern and set forth the facts in this case. Not all of the factual allegations relayed by the parties in their respective briefs were supported by the citations provided and/or contained in the parts of the depositions filed with the court. This Court has attempted to find each alleged fact within the entire submitted record, even if the citation is to a general document. The Court is not obliged to take further extraordinary steps to find undisputed facts. "[W]hile [a party] is not obligated to cite specific page numbers [in a person's deposition], he should 'point out the location of ... the designated portion of the record [which] must be presented with enough specificity that the ... court can readily identify facts upon which the ... party relies.'" *Centerior Service Company v. ACME Scrap Iron & Metal,* 104 F.Supp.2d 729, 735 (N.D.Ohio 2000) (Gaughan, J.) (*citing Inter-Royal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989)). This Court is "not required to speculate on which portion of the record the ... party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the ... party's claim." *Id.*

In either 1983 or 1984, Ford terminated Farmiloe for allegedly failing to respond to a five-day quit notice. (Defendant's Motion, Farmiloe Depo., p. 53–54.) Ford reinstated Farmiloe after his physician wrote a letter to Ford explaining that Farmiloe's failure to contact Ford may have been caused by his condition. (Defendant's Motion, Exhs. C & D.) In 1985, Farmiloe took another brief medical leave. (Defendant's Motion, Farmiloe Depo., p. 44, Rollins Aff., ¶ 7.) In January of 1988, Ford granted Farmiloe disability retirement due to neck and back pain. (Plaintiff's Response, Farmiloe Aff., ¶ 3.)

Farmiloe is a member of the United Auto Workers ("UAW") union. (Plaintiff's Response, Farmiloe Aff., ¶ 6.) The UAW, which represents the manufacturing employees at Ford, and Ford have had an agreement in place since 1990, under which an hourly disability retiree may return to work once the retiree is no longer disabled. (Plaintiff's Response, Farmiloe Aff., ¶ 6.)

In October of 1991, Farmiloe approached Ford about returning to work from his disability retirement and provided Ford's physician, Dr. Arlen Rollins ("Rollins"), with a return to work notice from Dr. Papa, his physician. (Defendant's Motion, Farmiloe Depo., p. 60, Rollins Aff., ¶ 10.) Dr. Papa opined that Farmiloe had chronic injuries which could be aggravated by working. (Defendant's Motion, Farmiloe Depo., p. 60, Rollins Aff., ¶¶ 10, 11.) Ford did not allow Farmiloe to return. (Plaintiff's Response, Farmiloe Aff., ¶ 5.)

In November of 1991, Farmiloe again approached Rollins about returning to work. (Defendant's Motion, Rollins Aff. ¶ 13.) After Farmiloe informed Rollins that he had joined Alcoholic's Anonymous, Rollins asked Farmiloe to authorize release of all his medical records from Kaiser Permanente, Farmiloe's medical provider. (Defendant's Motion, Farmiloe

Depo., p. 125, Rollins Aff., ¶¶ 13–15.) Farmiloe signed the release, but later rescinded the authorization on the advice of his union before Rollins received the records. (Defendant's Motion, Farmiloe Depo., p. 62, Rollins Aff., ¶ 17.) Ford did not allow Farmiloe to return. (Plaintiff's Response, Farmiloe Aff., ¶ 5.)

In January of 1992, Farmiloe approached Rollins a third time about returning to work and presented Rollins with a return to work form from Dr. Saran. (Defendant's Motion, Rollins Aff., ¶ 18.) Rollins repeated his earlier request that Farmiloe authorize a release of his medical records. (Defendant's Motion, Rollins Aff., ¶ 19.) After Farmiloe signed the release, Rollins sent the request to Kaiser Permanente; however, Kaiser Permanente did not release the records because Farmiloe again had changed his mind. (Defendant's Motion, Exh. G and Rollins Aff., ¶¶ 19–21.)

In mid to late 1996, Dr. Rasper, a podiatrist, evaluated Farmiloe and determined that, with lifts, Farmiloe could return to work without restrictions. (Defendant's Motion, Farmiloe Depo., p. 42–43 and Exh. H.) Dr. Rasper concluded that Farmiloe's back and neck problems were caused by one leg being shorter than the other. (Defendant's Motion, Farmiloe Depo., p. 42–43 and Exh. H.) As Dr. Rasper was not an expert on back and neck problems, he referred Farmiloe to Dr. Stauffer–Rossi, a chiropractor. (Defendant's Motion, Exh. H.)

In January 1997, Dr. Stauffer–Rossi examined Farmiloe. (Defendant's Motion, Exh. I.) Dr. Stauffer–Rossi noted the discrepancy in Farmiloe's leg lengths, diagnosed him with lumbar segmental dysfunction and treated him accordingly. (Defendant's Motion, Exh. I.) Dr. Stauffer–Rossi determined that Farmiloe had responded well to treatment and could re-

turn to work without restrictions. (Defendant's Motion, Exh. I.)

On April 8, 1997, Farmiloe sent a letter to Jerry O'Conner at Ford's Hourly Personnel and requested that Ford allow him to return under the UAW–Ford policy. (Plaintiff's Motion, Farmiloe Aff., ¶ 7 and Attach. 14; Defendant's Motion, Farmiloe Depo., p. 72–73 and Exh. J.) The same day, James Lyons, Farmiloe's attorney, sent a letter to O'Conner that included the information required under the UAW–Ford return to work policy. (Defendant's Motion, Exh. K.) In addition, Attorney Lyons sent a letter to Robert Battle, the Local Union President, which requested his assistance. (Defendant's Motion, Exh. L.)

On November 18, 1997, Dr. Kravitz, a John Hancock physician,[2] examined Farmiloe. (Plaintiff's Response, Farmiloe Aff., ¶ 10 and Attach. 17; Defendant's Motion, Farmiloe Depo., p. 129.) Dr. Kravitz's examination revealed no health problems except inactive ulcerative colitis and a foreshortened right leg that was corrected with a lift. (Defendant's Motion, Exh. M.) Farmiloe did not reveal any health problems to Dr. Kravitz. (Defendant's Motion, Exh. M.)

On November 21, 1997, John Hancock sent Farmiloe a letter indicating that, based upon Kravitz's examination, he was no longer disabled. (Defendant's Motion, Exh. N.) Accordingly, Farmiloe's disability benefits terminated on November 18, 1997. (Defendant's Motion, Exh.. N.)

Between November 11 and December 4, 1997, Farmiloe met with Mike Murphy, Ford's Supervisor of Personnel and Labor Relations, at the Walton Hills plant in order to determine a starting date. (Plaintiff's Response, Farmiloe Aff., ¶ 11.)

Murphy recommended that Farmiloe undergo a mental health fitness test or interview with Kaiser Permanente. (Plaintiff's Response, Farmiloe Aff., ¶ 11.) As a result, Farmiloe met with and was evaluated by Barbara Eady ("Eady"), a Kaiser Permanente Psychiatric Social Worker, on December 4, 1997. (Plaintiff's Response, Farmiloe Aff., ¶ 11 and Attach. 2.) Eady determined that Farmiloe "present[ed] no behavior today that would interfere with working." (Plaintiff's Response, Attach. 2.)

Also on December 4, 1997, Farmiloe met with Murphy and Rollins. (Plaintiff's Response, Farmiloe Aff., ¶ 12; Defendant's Motion, Rollins Aff., ¶ 22.) Farmiloe informed Murphy that he had successfully completed the mental health assessment and was ready to return. (Plaintiff's Response, Farmiloe Aff., ¶ 12.) Farmiloe also informed Murphy that Ford could obtain a copy of Eady's report and informed Rollins that Eady would provide him with a summary of her report. (Plaintiff's Response, Farmiloe Aff., ¶ 12; Defendant's Motion, Farmiloe Depo., pp. 91–92, 131 and Rollins Aff., ¶ 23.) When Rollins contacted Eady the next day, he was told that Eady would obtain a release for the records from Farmiloe. (Defendant's Motion, Rollins Aff., ¶ 25.) Eady then contacted Farmiloe, informed him that Ford had requested all of his mental heath records and recommended that he not release his entire mental health records. (Plaintiff's Response, Farmiloe Aff., ¶ 13 and Attach. 2.) Farmiloe agreed with Eady's recommendation and refused to release his entire mental health record. (Plaintiff's Response, Farmiloe Aff., ¶ 13.)

On March 17, 1998, Farmiloe filed a complaint with the EEOC alleging that Ford violated the Americans with Disabili-

---

2.  John Hancock was Ford's insurance carrier that administered disability insurance pay-

ments. (Defendant's Motion, p. 5.)

ties Act. (Plaintiff's Response, Farmiloe Aff., ¶ 15 and Attach. 15.) The EEOC issued a right to sue letter on August 12, 1998. (Plaintiff's Response, Farmiloe Aff., ¶ 17 and Amended Complaint Exh. A.)

On March 24, 1998, Rollins contacted Eady to determine why he had not received the medical records. (Defendant's Motion, Rollins Aff., ¶ 26.) Eady informed Rollins that Farmiloe had refused to release his entire mental health records. (Defendant's Motion, Rollins Aff., ¶ 27.) Rollins then contacted Farmiloe to request his mental health records again. (Plaintiff's Response, Farmiloe Aff., ¶ 16; Defendant's Motion, Rollins Aff., ¶ 29.) Farmiloe refused to release his entire mental health records and informed Rollins that under the ADA he was not required to release those records. (Plaintiff's Response, Farmiloe Aff., ¶ 16; Defendant's Motion, Rollins Aff., ¶ 30.) [3]

### Legal Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. In assessing the merits of the motion, the court shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *See Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied*, 522 U.S. 967, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997). The court's favorable treatment of facts and inferences, however, does not relieve the non-moving party of the responsibility to go beyond the pleadings to oppose an other-

wise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

An opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Accordingly, viewing the evidence in the light most favorable to the non-moving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251, 106 S.Ct. 2505.

### Analysis

In the only remaining Count in the amended complaint, Farmiloe alleges that Ford violated the Americans with Disabilities Act ("ADA") by refusing to rehire him and by asking for "all of the medical records of the Plaintiff as a precondition to rehiring and/or returning the Plaintiff to work." (Amend.Comp.¶ 21). Ford argues that the ADA permitted it to request Farmiloe's medical records and that it has refused to rehire Farmiloe, not on the

**3.** Ford has included several facts within its *Motion for Summary Judgment* that are not included in the above recitation of facts for a variety of reasons. For example, Ford alleges that Farmiloe shot his wife's dog. Farmiloe maintains his behavior was in self-defense. Ford also alleges, based upon a citation to Farmiloe's deposition, that Farmiloe was convicted of solicitation of underage females.

However, the cited section of Farmiloe's deposition does not support that allegation. Finally, Ford devotes a lengthy section of its Motion to Farmiloe's work as "Dr. Mystik" and his prescription of potions for his patients. However, in this Court's view, these allegations do not establish a mental condition or a job related disability.

basis of his alleged disability, but because he failed to complete the application process. The medical information Ford legitimately could request before allowing Farmiloe to return to work depends upon Farmiloe's status under the ADA at the time he attempted to return, *i.e.*, whether Farmiloe was (1) an employee, (2) a post-offer pre-employment applicant, or (3) a pre-offer applicant. *See* 42 U.S.C. § 12112(d)(2), (3), and (4). There are no cases directly on point.

Both parties implicitly acknowledge that Farmiloe does not fit perfectly within any of the three categories of persons covered under these provisions of the ADA. Ford contends that Farmiloe should be treated like a current employee or, alternatively, a post-offer pre-employment applicant. Under these two categories, an employer may conduct a broader inquiry into the individual's medical condition and ability to perform job-related functions that it can for an individual who is a pre-offer applicant. Farmiloe contends that he should be treated like a pre-offer applicant.

For the reasons set forth below, this Court finds that Farmiloe is most like a post-offer pre-employment applicant. However, under that standard, Ford must show that it did not request more information from Farmiloe than it requested of other returning disability retirees or that its request for additional information was prompted by the results of a medical review/examination to which all returning disability retirees are subjected. Ford has not demonstrated either. Therefore, Ford is not entitled to summary judgment.

### A. Current Employee—42 U.S.C. § 12112(d)(4)

With regard to an "employee," an employer covered by the ADA "may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). Farmiloe contends that he was not an "employee" returning from medical leave when he attempted to return to Ford. The ADA's definition of an employee provides no guidance on this issue; it defines an employee as "an individual employed by an employer." 42 U.S.C. § 12111(4); 29 C.F.R. § 1630.2(f); *see also Owens v. Southern Dev. Council, Inc.,* 59 F.Supp.2d 1210, 1214 (M.D.Ala.1999). As Title VII and the ADA contain the same definition of an "employee," *see* 42 U.S.C. § 2000e(f), cases defining an employee in Title VII cases are readily applied to ADA cases. *See Owens,* 59 F.Supp.2d. 1210 at 1214.

In *Walters v. Metropolitan Educ. Enters., Inc.,* 519 U.S. 202, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997), the Supreme Court defined an "employee" for purposes of Title VII under a two-prong analysis, both of which must be present for an individual to be an "employee." *Id.* at 211, 117 S.Ct. 660; *Owens,* 59 F.Supp.2d. 1210 at 1214. The first prong is called the "payroll method" and is "most readily demonstrated by the individual's appearance on the employer's payroll." *Walters,* 519 U.S. 202 at 206, 211, 117 S.Ct. 660; *Owens,* 59 F.Supp.2d 1210 at 1214. Under the second prong, the individual also must be an employee under traditional agency principles. *See Walters,* 519 U.S. 202 at 211, 117 S.Ct. 660, (*citing Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)). In *Nationwide,* the Supreme Court described this traditional approach as follows:

'In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill re-

quired; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.'

*Nationwide* 503 U.S. 318 at 323, 112 S.Ct. 1344 (*quoting Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 751–752, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). This "common-law test contains 'no shorthand formula or magic phrase that can be applied to find the answer, ... all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.'" *Nationwide,* 503 U.S. 318 at 324, 112 S.Ct. 1344 (*quoting NLRB v. United Ins. Co. of America,* 390 U.S. 254, 258, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968)).

In his deposition, Farmiloe denied receiving any income from Ford. (*See* Defendant's Motion—Plaintiff's Depo., p. 54.) Farmiloe also denied receiving any retirement benefits from Ford. *See id.* Ford does not contest these facts, presents no evidence that Farmiloe is on its payroll, and despite the argument to the contrary in its brief, has admitted that Farmiloe is not a current employee. (*See* Plaintiff's Response, Attach. 4—Defendant's Response to Plaintiff's Second Set of Interrogatories and Second Request for Production of Documents, # 15.) Also, Ford does not allege that it had any of the rights of an "employer" as outlined in *Nationwide* at the time Farmiloe attempted to rejoin Ford. Accordingly, Farmiloe is not an employee of Ford under either the "payroll method" or the traditional principles of agency law.

In support of its argument that Farmiloe should be treated like an employee returning from medical leave, Ford merely cites to cases (only one of which is from this Circuit) that are readily distinguishable. These cases do not address the test to determine Farmiloe's status under the ADA and do not justify a wholesale request for "all medical records." Unlike Farmiloe, who was not an employee and was retired, in the cases cited by Ford: the plaintiff was off work due to an on-the-job injury,[4] the plaintiff requested an accommodation in order to return to work,[5] the plaintiff was on paid leave or sick leave,[6] the plaintiff did not contest the

---

**4.** *Porter v. United States Alumoweld Co., Inc.,* 125 F.3d 243 (4th Cir.1997) (plaintiff off work due to an on-the-job injury); *Hogan v. Bangor and Aroostook Railroad Co.,* 61 F.3d 1034 (1st Cir.1995) (plaintiff off work due to an on-the-job injury and medical request for injury related records).

**5.** *Grenier v. Cyanamid Plastics, Inc.,* 70 F.3d 667 (1st Cir.1995) (plaintiff off work for mental health reasons and seeking an accommodation in order to return to work); *Reigel v. Kaiser Foundation Health Plan of North Carolina,* 859 F.Supp. 963 (E.D.N.C.1994) (employee, whose request for accommodation in returning to work and whose conduct while on medical leave due to physical injury raised concerns about her mental health, was required to submit to mental health examination but was not required or requested to release her entire mental health records).

**6.** *Miller v. Champaign Community Unit School District,* 983 F.Supp. 1201 (C.D.Ill. 1997) (employee on paid leave of absence pending outcome of an ordered psychiatric examination due to employee's increasingly disturbing behavior at work); *Sullivan v. River Valley School District,* 20 F.Supp.2d 1120 (W.D.Mich.1998) (plaintiff suspended with pay and ordered to undergo mental examination based upon his disruptive and manipu-

propriety of the employer obtaining medical information,[7] the employer sought to evaluate the plaintiff's condition due to the plaintiff's on-the-job behavior,[8] and the plaintiff was not disabled under the ADA.[9]

Farmiloe is not an employee nor is he remotely similar to an employee. Farmiloe was not on medical leave, but on disability retirement. Unlike a person on medical leave, Farmiloe cannot return to his job as soon as his medical condition improves. Under the UAW–Ford agreement, Farmiloe must wait for a position to become available and is not necessarily

entitled to his prior job. (*See* Defendant's Motion, p. 13.) Moreover, the defendant notes in its Motion for Summary Judgment that Farmiloe is in the process of completing an application for employment. (*See* Defendant's Motion, p. 14, n. 3.) The defendant has not cited any authority for the proposition that an employee returning from medical leave must file an application before returning to work. *See id.*

Based upon the foregoing, this Court concludes that Farmiloe is not an employee and the analogy between Farmiloe and an employee returning from medical leave advanced by Ford is not persuasive.[10]

lative behavior at work); *Rodriguez v. Loctite Puerto Rico, Inc.*, 967 F.Supp. 653 (D.Puerto Rico 1997) (company's request that plaintiff employee submit to medical examination before returning from two month sick leave was justified).

**7.** *Pesterfield v. Tennessee Valley Authority*, 941 F.2d 437 (6th Cir.1991) (plaintiff, who was fired because of physician's report and his violent outbursts at work, brought ADA suit but did not contest propriety of release of medical information from physician to company).

**8.** *Miller v. Champaign Community Unit School District*, 983 F.Supp. 1201 (C.D.Ill. 1997) (employee on paid leave of absence pending outcome of psychiatric examination due to employees increasingly disturbing behavior at work); *Sullivan v. River Valley School District*, 20 F.Supp.2d 1120 (W.D.Mich.1998) (plaintiff suspended with pay and ordered to undergo mental examination based upon disruptive and manipulative behavior at work); *Pesterfield v. Tennessee Valley Authority*, 941 F.2d 437 (6th Cir.1991) (plaintiff, who was fired because of physician's report and his violent outbursts at work, brought ADA suit but did not contest propriety of release of medical information from physician to company); *Metzenbaum v. John Carroll Univ.*, 987 F.Supp. 610 (N.D.Ohio 1997) (plaintiff employee was ordered to undergo examination based upon conduct observed at a judicial hearing held because of employee's failure to release results of uncontested employer ordered psychological examination required of all employees).

**9.** *Rio v. Runyon*, 972 F.Supp. 1446 (S.D.Fla. 1997) (court found plaintiff, who was on light duty restrictions due to physician's instructions, was not disabled or an otherwise qualified individual).

**10.** Even assuming that an analogy could be made between Farmiloe and an employee returning from medical leave, Ford's request for all of Farmiloe's mental health records would exceed the limited scope of permissible requests. An employer can only conduct a medical inquiry of an employee that is job-related and consistent with business necessity. *See* 42 U.S.C. § 12112(d)(4); *EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities*, No. 915.002 (March 25, 1997) ¶ 14. However, when an employee returns to work following a medical leave of absence, a request for medical records or an examination must be limited to the effect of her medical condition that necessitated her leave on her ability to perform essential job functions, either with or without accommodation. *See EEOC Guidance supra*, ¶ 14, Ex. D. If the employee was on medical leave for depression which necessitated a hospital stay and a medication adjustment, the employer's inquiries on her return as to "her entire psychiatric history or about the details of her therapy sessions would, for example, exceed this limited scope." *Id.* Here, Farmiloe was on disability retirement due to neck and back pain. (*See* Plaintiff's Response, Farmiloe Aff., ¶ 3.) Therefore, Ford's request for all of Farmiloe's mental health records would exceed the scope of Farmiloe's disability retirement and be violative of the ADA if he were an employee returning to work from medical leave.

Thus, it is not necessary to determine whether Ford's request for all of Farmiloe's mental health records was appropriate under the standards that govern medical examinations of and records sought from a current employee returning to work.

### B. Pre–Offer Applicant—42 U.S.C. § 12112(d)(2)

With regard to a pre-offer applicant, an employer covered by the ADA "may make preemployment inquiries into the ability of an applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2)(B). Farmiloe argues that he is a pre-offer applicant because he was not a Ford employee at the time he applied for a job in 1997. Ford counters that Farmiloe is not a pre-offer applicant because he enjoys rights with Ford that non-disability retiree applicants do not. As Ford correctly notes, the return policy and other memoranda of agreement between the UAW and Ford provide certain and specific rights to disability retirees. (*See* Defendant's Motion, p. 9 and Exhs. E & O.) These rights demonstrate an affiliation between Ford and Farmiloe that are not present with non-disability retiree applicants, *i.e.*, Ford must allow a disability retiree to return to work when his or her disability ceases and a position becomes available. As non-disability retiree applicants do not enjoy this same "benefit," Farmiloe has a considerable advantage over non-disability retiree applicants, as well as a considerable advantage over applicants who have no prior relationship with Ford.

As Farmiloe's situation is readily distinguishable from that of a pre-offer appli-

cant, Farmiloe's claim that he should be treated like a pre-offer applicant is without merit.

### C. Post–Offer Pre–Employment Applicant—42 U.S.C. § 12112(d)(3)

The remaining category of applicants is generally referred to as "post-offer preemployment applicants." The ADA defines this type of applicant as someone to whom "an offer of employment has been made [but is] prior to the commencement of the employment duties [of that person]." 42 U.S.C. § 12112(d)(3). The only condition mentioned in the statute for this type of applicant is passing a required medical examination. *Id.; Buchanan v. San Antonio*, 85 F.3d 196, 199 (5th Cir.1996). Farmiloe does not fit precisely within this category of persons because his return to Ford is conditioned not only upon recovery from his medical disability, *but also the presence of a job opening.*

However, the EEOC's written interpretive materials indicate that a person may be categorized as a post-offer pre-employment applicant even if the offer is not based upon an actual current opening. *See EEOC Notice: ADA Enforcement Guidance: Preemployment Disability–Related Questions and Medical Examinations*, No. 915.002 (Oct. 10, 1995) p. 12.[11] The EEOC's position is rational, reasonable, and an apparently permissible construction of the statute, and is entitled to some deference. *See Gilday*, 124 F.3d at 766. As such, the additional condition that a position become vacant before Farmiloe begins actual work is not one that should

---

11. This Circuit has recognized that "administrative interpretations of the [ADA] by the enforcing agency, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Gilday v. Me-*costa County, 124 F.3d 760, 766 (6th Cir. 1997) (citations omitted); *see also Barnes v. Cochran*, 944 F.Supp. 897, 904 (S.D.Fla.1996) (*quoting Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)) (same).

preclude Farmiloe from being treated as a post-offer pre-employment applicant.

Farmiloe asserts he is not a post-offer pre-employment applicant because Ford has not extended an offer of employment to him. (*See* Plaintiff's Response, p. 18.) While it is technically true that Ford has never formally extended an offer to Farmiloe, the agreement between the UAW and Ford is reasonably construed as a standing offer of employment. Under the agreement, a disability retiree has the right to return to work upon the presence of a job opening and the cessation of his or her disability. Therefore, as Farmiloe is a disability retiree, a member of the UAW, and subject to this agreement, this Court is satisfied that an offer of employment has been made to Farmiloe.

Based upon the above, it is this Court's view that Farmiloe is most like a post-offer pre-employment applicant and should be treated as such. Thus, it is now necessary to determine whether Ford's request for all of Farmiloe's mental health records was appropriate under the standards that govern examinations of a post-offer pre-employment applicants.

Under the ADA, an employer may "require a medical examination [of post-offer pre-employment applicants] and may condition an offer of employment on the results of such examination, if—(A) all entering employees are subjected to such an examination regardless of disability ..." 42 U.S.C. § 12112(d)(3). A medical examination at this stage is

> not required to be job-related and consistent with business necessity. However, if an employer withdraws an offer of employment because the medical examination reveals that the employee does not satisfy certain employment criteria,

either the exclusionary criteria may not screen out or tend to screen out an individual with a disability or a class of individuals with disabilities, or they must be job-related and consistent with business necessity.

29 C.F.R. § 1630.14(b). Therefore, once an offer of employment has been made to an applicant, an employer may "make unlimited medical inquiry, as long as all applicants for that job category are given the same medical examination or subjected to the same medical inquiry." Theresa L. Clark, *A Map for the Labyrinth: How to Conduct Job Interviews and Obtain Medical Information Without Violating the Americans with Disabilities,* 13 Lab. Law. 121, 135 (1997).

Here, Farmiloe challenges Ford's request for all of Farmiloe's mental health records. Ford contends that it requested all of Farmiloe's mental health records because it was "well aware of Plaintiff's history of substance abuse, psychiatric problems, and violent tendencies," possibly suggesting that there is a business necessity for delving into Farmiloe's medical files. (Defendant's Motion for Summary Judgment, p. 14.) Ford's argument fails for several reasons. First, there is no evidence in the record to support this alleged history except the affidavit of Rollins, which does not cite to any evidence. Second, this is an overstatement of what facts do exist in the record and it appears that Ford has taken some liberty with its characterization of the facts. *See e.g., note* 3, *supra.* Third, Farmiloe agreed to submit to a mental health exam and to release a summary of the exam to Ford. Ford, however, was not satisfied with this and requested information far exceeding the scope of its stated concern.[12] Fourth, this

---

12. For example, all medical records likely would contain a listing of all medications. An employer's ability to request information concerning an employee's use of prescription drugs is in doubt. *See Roe v. Cheyenne Mountain Conference Resort,* 920 F.Supp. 1153, 1155 (D.Colo.1996), *overruled on other grounds,* 124 F.3d 1221 (10th Cir.1997).

"history" allegedly occurred during Farmiloe's prior employment with Ford, yet he continued to work at Ford until he retired for back and neck problems. Finally, and most significantly, Ford must show that "... all entering employees are subjected to such an examination regardless of disability ..." 42 U.S.C. § 12112(d)(3)(A).

Contrary to Ford's argument that, at the post-offer pre-employment stage, it has the right to "request additional medical information of specific individuals so long as the request for additional information is 'medically related to the previously obtained medical information,'" such a right is tempered by the same EEOC Guidance. (Defendant's Motion for Summary Judgment, *quoting EEOC Notice: ADA Enforcement Guidance: Preemployment Disability–Related Questions and Medical Examinations*, No. 915.002 (Oct. 10, 1995) p. 13.) The EEOC Guidance permits an employer to request the information as Ford quotes, but only "[a]fter an employer has obtained basic medical information from all individuals who have been given conditional offers in a job category..." *EEOC Notice supra.* Ford has not detailed any argument or presented any evidence to this Court applying the standard to this case; *i.e.*, whether its request of Farmiloe's entire mental health records is a request made to all individuals or the specific request for additional information prompted by the results of a medical review/examination to which all returning disability retirees are subjected. This Court does not have the facts to determine: (1) whether Ford requires all post-offer pre-employment applicants to submit all of their mental health records, (2) whether Ford's request for Farmiloe's entire mental health records is a request for additional information based upon its review of his past medical file with Ford, (3) whether Ford reviews all of the returning disability retiree's medical files with Ford, (4) whether Ford regularly requests non-disability retirement related medical records, and (5) whether Ford's request for Farmiloe's entire mental health record is reasonable under the ADA. Without such facts, this Court cannot say, as a matter of law, that Ford's request was appropriate under the ADA. Accordingly, summary judgment is inappropriate.

### Conclusion

For the forgoing reasons, the Court recommends that the defendant's Motion for Summary Judgment (Doc. No. 13) be DENIED.

March 23, 2001.

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice. Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See, United States v. Walters,* **638 F.2d 947 (6th Cir.1981).** *See also, Thomas v. Arn,* **474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985),** *reh'g denied,* **474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986).**